**Marakay J. ROGERS, et al., Plaintiffs**

v.

**Pedro A. CORTES, Secretary of the Commonwealth of Pennsylvania, Defendant.**

**No. 4:CV 06–0066.**

United States District Court, M.D. Pennsylvania.

April 5, 2006.

Samuel C. Stretton, The Law Office of Samuel C. Stretton, West Chester, PA, for Plaintiffs.

Howard G. Hopkirk, Gregory R. Neuhauser, Office of Attorney General–Litigation Section, Harrisburg, PA, for Defendant.

## MEMORANDUM AND ORDER

JONES, District Judge.

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is Plaintiffs', Marakay Rogers, Esq., The Green Party

of Pennsylvania, The Constitution Party of Pennsylvania, Ken V. Krawchuk, and Hagan Smith, Amended Motion for Preliminary Injunction ("the Motion"). (Rec.Doc. 19). A hearing was held on the merits of the Motion on February 2, 2006, and thereafter the parties submitted briefs and proposed findings of fact and conclusions of law. (Rec. Docs. 29, 34 and 35).

For the following reasons, the Motion (doc. 19) will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY:

This action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983 was initiated by the Plaintiffs Marakay Rogers ("Rogers"), the endorsed candidate of the Green Party for Governor of the Commonwealth of Pennsylvania in the November 2006 general election; the Green Party of Pennsylvania ("Green Party"); the Constitution Party of Pennsylvania ("Constitution Party"); Ken V. Krawchuk ("Krawchuk"), the endorsed candidate for the United States Senate for the Libertarian Party; and Hagan Smith ("Smith"), the endorsed candidate for Governor for the Constitution Party (collectively "the Plaintiffs").[1] The sole remaining defendant is Pedro A. Cortes ("Defendant"), the Secretary of the Commonwealth.[2]

The Plaintiffs challenge the constitutionality of Section 2911(b) of the Pennsylvania election code, See 25 Pa. Const. Stat. § 2911(b), as applied to minor political parties and their candidates. Section 2911(b) provides that a candidate of a minor political party for United States Senator, Governor of the Commonwealth, or other statewide office must obtain on nomination papers a number of signatures of registered voters that is "at least equal to two percentum of the largest entire vote cast for any elected candidate in the State at large" in the last election for statewide offices.

The Green Party and the Constitution Party are both "minor political parties," as defined by Sections 801(a) and 912.2(a) of the Election Code, see 25 Pa. Const. Stat. § 2831(a) and § 2872.2(a), for purposes of the 2006 general election. A political party is defined by Section 801(a) as:

Any party or political body, one whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than [2%] of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least [2%] of the largest entire vote cast in the State for any elected candidate ...

25 Pa. Const. Stat. § 2831(a). A "minor political party" is defined by Section 912.2(a) of the Election Code as:

A political party as defined under section 801(a) or (b) [of the Election Code] whose State-wide registration is less than [15%] of the combined State-wide registration for all State-wide political parties as of the close of the registration period immediately preceding the most recent November election.

25 Pa. Const. Stat. § 2872.2. Both the Green and the Constitution Parties have qualified as minor political parties under

---

**1.** Krawchuk and Smith were added as party-plaintiffs pursuant to an agreement between the parties.

**2.** The Attorney General and the Governor of Pennsylvania, as well as the Commonwealth of Pennsylvania itself were originally named as Defendants. However, by agreement of the parties, these Defendants were dismissed, since the Secretary of the Commonwealth is responsible for supervising elections in the Commonwealth of Pennsylvania and for enforcing the Pennsylvania Election Code.

the Pennsylvania Election Code for the 2006 election cycle.

The largest entire vote cast for an elected candidate in the last statewide election was 3,353,489 votes cast for Robert Casey, Jr., who was elected State Treasurer in the 2004 general election. As a result, the number of signatures that a minor political party candidate must obtain on nomination papers in order to be placed on the ballot for the 2006 general election is two percent of Mr. Casey's vote total, which is 67,070. The 2006 general election signature requirement for minor political party candidates is decidedly larger than in past general election years because Mr. Casey received a record number of votes in the 2004 general election.

A minor political party candidate may circulate nomination papers from March 8, 2006 until August 1, 2006 for the November 2006 general election. Each signatory of a nomination paper for a minor political party candidate must be a qualified elector of the Commonwealth who has either registered to vote on or before the day he or she signs the nomination paper or signs a valid voter registration form before or on the same day he or she signs the nomination paper.[3] A signatory may or may not be a member of a political party and may sign nominating papers in support of only one minor political party candidate for each office for which there is a vacancy. However, an individual may sign a minor political party candidate's nomination paper even if he or she has signed a nomination petition in support of a Republican or Democratic candidate or has voted in the primary of either party. For a signature to be valid, the signer must write his or her legibly printed name and residence,

including city, borough or township, in addition to his or her signature. The signer must also write the date, in either numbers or words. A signature will be deemed invalid if the other identifying information is written by an individual other than the signatory. Any omission of the necessary identifying information will also cause the signature to be deemed invalid and stricken. The use of "ditto" marks, nicknames or a printed signature will likewise cause a signature to be stricken. *See generally In re Nomination of Flaherty,* 564 Pa. 671, 770 A.2d 327 (2001); *see also In re Nomination Petition of Silcox,* 543 Pa. 647, 674 A.2d 224 (1996).

A minor political party may circulate nomination papers that include the names of all the party's endorsed candidates for all federal, state and local offices in the Commonwealth. Therefore, a minor political party is not required to obtain signatures separately for each office in order to place its endorsed candidates on the ballot, as candidates for the Republican and Democratic party are required to do.

Notably, major political party candidates must follow an entirely different process to be placed on the general election ballot. *See* Pa. Const. Stat. §§ 2831(a), 2861–2883. Presently, the Republican Party and the Democratic Party are the only major political parties in the Commonwealth. Of the 8,064,550 registered voters in Pennsylvania affiliated with a political party as defined by Section 801(a), over 7 million are registered and enrolled in either the Democratic Party or the Republican Party.

To be placed on the ballot for the general election, a major political party candidate for statewide office must first win a

---

3. Therefore, it is entirely appropriate for an individual to sign a nomination form and a voter registration form at the same time, so long as the individual is a qualified elector and the registration form is postmarked on the same day as the signature on the nomination paper.

primary election. To even appear on the ballot for the primary election for example, a candidate for Governor of Pennsylvania must obtain, during a three-week collection period, the signatures of 2,000 registered voters who are formally enrolled only with that candidate's political party. Thereafter, to be placed on the ballot for the general election, the candidate must poll a plurality of the vote in the primary election. Due to the size of the two major political parties, the candidates for statewide office must typically obtain well in excess of several hundred thousand votes to win the primary and thus be placed on the general election ballot. For example, in the last gubernatorial primary, the winners, current Governor Edward G. Rendell, a Democrat, and his Republican challenger Mike Fisher, polled 702,442 and 538,757 votes respectively.

The Plaintiffs allege that the signature requirement of Section 2911(b) is overly burdensome and effectively prevents them from being placed on the ballot for the 2006 general election in violation of their right of association under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The Plaintiffs argue that their First Amendment right to freedom of association is violated because the limited membership of the Green, Libertarian and Constitution Parties essentially requires them to obtain signatures from individuals who are not members of their individual parties. Plaintiffs further argue that because the ballot requirements faced by minor political parties are greater than those faced by members of the major political parties, their right to equal protection is violated.

The Plaintiffs move this Court to declare Section 2911(b), as applied to minor political parties, unconstitutional and to enjoin the operation and enforcement of Section 2911(b). The Plaintiffs also request that we enter an order allowing the Plaintiffs to participate in the general election if they obtain the same number of signatures as the Republican and Democratic parties. Alternatively, the Plaintiffs request this Court to develop a system that would fairly provide a modicum of support for the minor political party candidates.[4] Finally, Plaintiffs seek attorneys fees and costs pursuant to 42 U.S.C. § 1988.

## DISCUSSION:

Our first task in determining the constitutionality of Section 2911(b) is to determine the applicable level of scrutiny. By measuring the burden a statute imposes on a constitutional right we are pointed to the level of scrutiny that we should apply. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment that the Plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)(quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). Under this standard, if the burden imposed upon the

---

4. Plaintiffs suggest that this Court order a minor political party to be defined based upon a statewide voters registration of five one-hundredths of one percent rather than upon the current two percent of a winner's total vote. Plaintiffs also submit that this Court should order that the minor party candidates are not required to meet any signature requirement because the minor political parties themselves have already demonstrated a modicum of support. (Rec. Doc. 13 at 5).

right is severe, then the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)).

■ However, when the election law only imposes "reasonable, nondiscriminatory restrictions" upon the plaintiff's First and Fourteenth Amendment rights, "the State's regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564).

The Defendant submits that the appropriate standard of review to apply to Section 2911(b) is the rational basis test. The Defendant argues that in *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), the United States Supreme Court created a five percent safe harbor when it upheld as constitutional a signature requirement of five percent of all eligible voters. Defendant notes that Pennsylvania requires minor political party candidates to obtain 67,070 signatures to be placed on the November 2006 general election ballot and that this amount is less than one percent of the total amount of registered voters in the Commonwealth. Since Pennsylvania's two percent requirement falls squarely underneath the *Jenness* five percent threshold, the Defendant argues that Section 2911(b) *ipso facto* does not constitute a substantial burden on the right to vote, and therefore need not be subjected to heightened scrutiny.

In *Jenness*, the Supreme Court upheld a Georgia statute that required candidates for elective public office who did not enter and win a political party's primary election to obtain signatures from an amount of individuals equaling five percent of *all* registered voters in the prior election for the office in question.[5] The candidates had 180 days to circulate the petitions. Individuals could sign a petition even if they intended to vote in the major-party primary, and the signatories were not required to be members of the candidate's political party.

The Supreme Court upheld the five percent signature requirement by stating:

> There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot— the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.

*Jenness*, 403 U.S. at 441–442, 91 S.Ct. 1970. The Supreme Court reasoned that although the five percent figure was "apparently somewhat" higher than the "percentage of support required to be shown in many States as a condition for ballot position," the requirement was balanced by the lack of "arbitrary restrictions" upon the eligibility of potential signatories. *Id.* at 442, 91 S.Ct. 1970.

Defendant argues that although 67,070 signatures may seem to the Plaintiffs to be an extraordinarily large number to obtain, it clearly is not such a burdensome requirement when measured against the total number of registered voters in the Commonwealth. Defendant contends that although the signatures must meet particular standards or risk being stricken, Pennsylvania's requirements as to whom

---

**5.** We pause to note that the Georgia statute obviously mandated that prospective candidates garner far more signatures than under the Pennsylvania statute we review today, which requires two percent of the largest entire vote cast for any elected candidate in the state at large.

may sign a nomination paper, like Georgia's in *Jenness,* are fairly broad. That is, an individual who signs a petition for a major political candidate or voted in the Republican or Democratic primary is not precluded from signing a nomination paper for a minor political party candidate. Further, minor political party candidates may collect signatures for multiple offices on a single nomination paper, rather than each individual candidate collecting the required 67,070 signatures.

Defendant asserts that while it is true that obtaining the requisite amount of signatures might be difficult for Plaintiffs to accomplish, it is not impossible. At the hearing, testimony was presented by Krawchuck and James Clymer, Constitution Party candidate for U.S. Senator in 2004, that they had expended nearly $70,000 and $200,000 respectively obtaining signatures on nomination papers for the 2004 general election. However, as Defendant accurately submits, the fact that an individual or a political party lacks sufficient resources to successfully run for public office does not constitute a violation of the rights of the candidate or the political party under the First Amendment.[6]

Plaintiffs counter that Section 2911(b) imposes a severe burden on minor political party candidates' access to the ballot, and therefore the statute must be subjected to strict scrutiny. Plaintiffs submit that both the Green Party and the Constitution Party have already proven a "modicum of political support" in the electorate because they have already qualified as minor political parties under the Pennsylvania Election Code. Further, Plaintiffs argue that these minor political party candidates have already received the endorsement of their respective parties by route of the internal procedures governing each.

Plaintiffs argue that requiring candidates of minor political parties to obtain the requisite number of signatures on nomination papers to be placed on the ballot is overly burdensome and serves no compelling government interest. Although Plaintiffs concede that avoiding ballot clutter is a legitimate state need, they argue that the Commonwealth has not experienced cluttered ballots over the years. Moreover, Plaintiffs assert that the signature requirement for minor political party candidates is inappropriate in light of the fact that by this stage of the process it can be assumed that the minor political party has already established a 'modicum of support' by qualifying for minor political party status under the Pennsylvania Election Code.

Plaintiffs also submit that Section 2911(b) violates their First Amendment right to freedom of association. Presently in the Commonwealth, the Green Party has 16,323 enrolled members, the Libertarian Party 34,100 members and the Constitution Party 3,008 enrolled members. Plaintiffs argue that Section 2911(b) necessarily requires qualified minor political party candidates to garner the support of persons outside of their party in order to be placed on the general election ballot, since obviously none of the minor parties at present has a membership as great as 67,070 individuals. Thus, Plaintiffs submit that members of qualified minor political parties, with their own internal nomination procedures, are forced to associate with

---

6. We do note, as will be stated in our conclusion, that a finding of constitutionality does not necessarily imply our endorsement of the logic of Section 2911(b). While the fact that candidates from minor parties must potentially expend large sums to solicit signatures is insufficient to render the law unconstitutional, we share Plaintiffs' concerns about the need for prospective candidates to expend ever-increasing amounts of money and how that colors the political process.

non-members in violation of their First Amendment right to freedom of association, and that Section 2911(b), in effect, forces association in order to get on the ballot.

Plaintiffs rely on the Supreme Court's decision in *California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000) to support their freedom of association argument under the First Amendment. In *Jones*, the Supreme Court held that a state could not require a political party to hold an open primary in which non-party members were allowed to vote. The Supreme Court reasoned that open primaries allow non-party members to usurp the party's ability to chose its own candidates for elective public office, in violation of that party's First Amendment freedom of association.

The Defendant responds to Plaintiffs' contention that *Jones* should guide us by stating that Plaintiffs' reliance on *Jones* is misplaced, and that it is clearly distinguishable from the instant case. The Defendant submits that minor political parties in Pennsylvania conduct closed conventions at which the party's candidate for each office is selected, and as a result individuals outside the party have no bearing on the candidate-selection process. Rather, Defendant argues that minor political party candidates must rely on individuals outside their party only to sign nomination papers, to show that these candidates have sufficient support in the general electorate to be viable candidates and warrant being placed on the general election ballot. Defendant argues that Section 2911(b) is not a violation of the Supreme Court's mandate in *Jones*, because it does not interfere with the minor political party's internal candidate selection process, but rather Section 2911(b) serves the important state interest of preventing non-viable candidates from being placed on the ballot.

We will note that the most appropriate way to arrive at the standard of review in ballot access cases was perhaps most cogently announced by the Supreme Court in *Anderson*. There, the Supreme Court developed an analytical framework under which the reviewing court:

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the state as justifications for the burden imposed by the rule. In passing judgment, the court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all of these factors is the reviewing court in a position to decide whether the challenged provision is constitutional.

*Anderson*, 460 U.S. at 789, 103 S.Ct. 1564.

After a close review of the submissions of the parties and the testimony given at the hearing, it is our opinion that Section 2911(b) does not impose a severe burden upon the Plaintiffs' constitutional rights, and accordingly, we will apply the rational basis test to the statute to determine its constitutionality.

We will first note that in light of the aforecited *Jenness* five percent safe harbor, we hold that the signature requirement imposed by Section 2911(b) cannot be considered a substantial burden upon minor parties. As previously referenced, Section 2911(b) requires minor political party candidates to obtain signatures amounting to two percent of the largest entire vote cast for any elected candidate

in the state at large in the last election for statewide offices. We reiterate that this percentage is substantially smaller than the percentage upheld by the Supreme Court in *Jenness*. Moreover and as noted, Section 2911(b) applies this smaller percentage to an aggregate number that is necessarily lower than *all* of the registered voters in the prior election, which was the requirement reviewed in *Jenness*. Despite the Plaintiffs' assertions to the contrary, *Jenness* remains precedential upon this Court unless and until it is altered by the Supreme Court itself. Notably, the Supreme Court has not altered the essential holding of *Jenness* in the course of the over three decades that have elapsed since it was decided.

While the holding in *Jenness* necessarily implies that Section 2911(b) is not overly burdensome, we further believe that the operation of this statute within the context of the Pennsylvania Election Code and the current state of the Pennsylvania electorate indicates that it does not place a substantial burden upon any protected constitutional right. Although it is clear that the requisite signatures must meet certain standards or risk being stricken, we note again that the Plaintiffs are free to collect signatures from the entire population of registered voters, regardless of party affiliation. Plaintiffs may obtain signatures from an elector enrolled in the Democratic or Republican Party, even if that elector has signed a nominating petition for a candidate of his own party or intends to vote in his or her major-party primary. And while it is true that an elector may only sign one minor party nomination paper, presently there are only three qualified minor political parties in the Commonwealth, thereby leaving each party with a pool of millions of electors from whom to seek signatures.

■ Accordingly and as noted, because we find that Section 2911(b) does not impose a substantial burden on a fundamental right, we hold that the appropriate level of scrutiny to apply to the statute is the rational basis test. With that task accomplished, we turn to an elucidation of the precise regulatory interests cited by the Commonwealth in order to determine if these identified interests are sufficient to justify the restrictions Section 2911(b) imposes upon the Plaintiffs.

Defendants submit that there are two regulatory interests advanced by Section 2911(b). They are first, that the statute operates to limit or effectively extinguish ballot clutter from the Commonwealth's general election ballot and second, that Section 2911(b) functions to insure that minor political party candidates have sufficient support with the general electorate to be considered viable candidates and warrant being placed on the ballot. We shall discuss each of the Commonwealth's purported legitimate regulatory interests in turn.

■ The Supreme Court has recognized that elimination of ballot clutter is a legitimate state interest: "A State has a legitimate interest in regulating the number of candidates on the ballot." *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)(citing *Jenness*, 403 U.S. at 442, 91 S.Ct. 1970; *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)). Subsumed within the interest of reducing ballot clutter are various other legitimate state interests, including prevention of clogging election machinery, avoidance of voter confusion, and assurance that the winner is the choice of the majority. *See Bullock*, 405 U.S. at 145, 92 S.Ct. 849. Plaintiffs argue that the Defendant does not have a legitimate interest in reducing ballot clutter because Pennsylvania is not plagued by overcrowded ballots.

However, Plaintiffs' argument widely misses the mark on this point. The fact that Pennsylvania does not suffer from clutter ballots is clearly indicative of the fact that Section 2911(b) is indeed advancing the legitimate state regulatory interests that the Defendant asserts. Put another way, Section 2911(b) by its operation prevents the evident clutter and confusion that undoubtedly would be caused by having a plethora of non-viable candidates appear on the general election ballot.

Second, the Defendant asserts that Section 2911(b) advances the legitimate state regulatory interest of ensuring that minor political party candidates are viable candidates with the general electorate and have generated sufficient support to warrant being placed on the ballot. As we have previously noted, the current enrollment of the three presently qualified minor political parties is quite small when compared with the total number of registered voters in the Commonwealth. Therefore, although a minor political party itself endorses an individual to be its candidate for statewide office, that is clearly no guarantee that the candidate will garner support with the general electorate. By requiring these chosen candidates to show a further modicum of support with the electorate before obtaining a position on the ballot, Pennsylvania prevents non-viable candidates from being placed on the general election ballot. With their present enrollment numbers, even assuming uniform support for a minor party candidate, the votes of all the members of a minor political party could never be enough to elect its candidate to a statewide office. Therefore, it is wholly legitimate for the Commonwealth to require minor political party candidates to show an additional level of political support with the electorate above and beyond the modicum of support already shown to qualify the party itself, since, to reiterate, such candidates could not be elected without the electoral support of those who do not share their party affiliation.

Therefore, it is our opinion that the Commonwealth's proffered regulatory interests are legitimate and sufficient to justify the restrictions imposed upon the Plaintiffs by Section 2911(b). Moreover, although the requirements of Section 2911(b) may be difficult for some minor political party candidates to meet, the section is not overly burdensome and does not act as a functional bar to ballot position for these candidates.

Coextensive with the Plaintiffs' First Amendment argument, Plaintiffs argue that Section 2911(b) violates the Equal Protection Clause of the Fourteenth Amendment because candidates of minor political parties are treated differently than major political party candidates. We will next turn to an examination and disposition of this issue.

It is well established that there are legitimate reasons for states to treat minor and major party candidates differently from one another. As the Supreme Court stated in *Jenness*:

> The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike . . .

*Id.* at 441–442, 91 S.Ct. 1970. The Supreme Court also noted in *Jenness* that Georgia did not violate the Equal Protection Clause of the Fourteenth Amendment

by creating two alternate paths to the ballot for minor and major political parties, in light of the fact that neither path could be assumed to be inherently more burdensome than the other. *See id.* at 440, 91 S.Ct. 1970.

The Plaintiffs argue that major party candidates need only 1,000 to 2,000 signatures to be placed on the primary ballot. While this assertion is true, we again note that once major party candidates make it to the primary ballot, they must then poll a plurality of votes, in the hundreds of thousands, in order to be placed on the general election ballot. In essence then, it could be argued that major political party candidates are required to show a *greater* amount of support than minor political candidates in order to appear on the general election ballot. Time and again courts have been presented with the argument that analogizes the 1,000 to 2,000 signature *primary ballot* requirement for major parties to the two percent (here 67,070) signature *general election* requirement for minor parties. This is an unavailing attempt to in effect compare an apple to an orange, as these requirements are distinctly different things involving different electoral events. A primary election is not a general election, and to endeavor to measure ballot access requirements for one against the other grossly confuses the issue. Therefore, the Plaintiffs' argument that general election ballot access requirements for minor political party candidates are more onerous than for major party candidates to a degree that renders Section 2911(b) in violation of the Equal Protection Clause of the Fourteenth Amendment is without merit.

### CONCLUSION:

Having rendered the above analysis and conclusions, we will take this opportunity to observe that as submitted by Plaintiffs, there is very likely a better way for the Commonwealth to provide access to the general election ballot for minor party candidates. Section 2911(b) is somewhat cumbersome in its operation, and we are not at all sure that at the time of its enactment a future signature requirement as high as 67,070 was envisioned. However, that the General Assembly could have done better, or that minor party candidates face a somewhat daunting task to get on the general election ballot in 2006 are insufficient reasons to overcome the existing jurisprudence that clearly guides us to find Section 2911(b) constitutional. This Court is not unsympathetic to the minor parties' dilemma, and their case was nobly and well argued by Plaintiffs' counsel. We are not however a super-legislature, but rather a court of law, and thus we decline to supplant our wisdom in place of that of the Commonwealth's elected officials. That said, we strongly urge the General Assembly to consider enactments that will simultaneously meet the identified state interests but also allow for a less ponderous means of ballot access for minor political parties in Pennsylvania.

We will also note that we share the Commonwealth's concern, as evidenced within Section 2911(b), that without a law that compels minor party candidates to demonstrate a modicum of support in order to qualify for the general election ballot, there may arise ballot clutter sufficient to confuse voters. Undoubtedly, and in particular during these contentious times in Pennsylvania politics, some will brand this concern as undemocratic in that it places little faith in the ability of voters to sort out a potentially long general election ballot. While this degree of confidence in the electorate is laudable, we believe that establishing a reasonable level of support for statewide candidates, rather than allowing for a *de facto* open ballot, is clearly the better practice.

Striking a balance between these competing interests will always be problematic. While Section 2911(b) is an imperfect rendering, it is also in our view a constitutional one. As a result, we decline to afford Plaintiffs the extraordinary relief they request.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Amended Motion for Preliminary Injunction (doc. 19) is DENIED.