770 A.2d 327

**In re NOMINATION Petition OF Mary FLAHERTY for Office of Judge of the Commonwealth Court.**

**Appeal of John A. Hanna.**

Supreme Court of Pennsylvania.

Submitted April 23, 2001.

Decided May 8, 2001.

674

Linda M. Martin, Ralph J. Teti, Philadelphia, Karen M. Balaban, for John A. Hanna.

Michael E. Flaherty, Carnegie, Mary R. Catherine Flaherty, for Mary Flaherty.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

NIGRO, Justice.

Appellant, John A. Hanna, appeals from an order of the Commonwealth Court which dismissed his petition to set aside the nomination petition of Mary Flaherty ("Candidate"), a candidate for the primary election for the Democratic nomination for Judge of the Commonwealth Court.[1] For the reasons set forth below, we reverse the decision of the Commonwealth Court and set aside Candidate's nomination petition for failure to comply with the five county requirement of Section 912.1(10) of the Election Code, 25 P.S. § 2872.1.

On March 6, 2001, Candidate filed a nomination petition with the Secretary of the Commonwealth which allegedly contained 1,912 valid signatures of registered and enrolled electors of the Democratic Party residing in the Commonwealth, including over one hundred signatures from electors

---

1. This Court has exclusive jurisdiction over this matter pursuant to 42 Pa.C.S. § 723(a), which provides for a direct appeal from a final order of the Commonwealth Court concerning any matter commenced in that court.

residing in each of the following seven counties: Allegheny, Beaver, Erie, Montour, Philadelphia, Washington, and Westmoreland. Subsequently, on March 13, 2001, Appellant filed a petition to set aside Candidate's nomination petition with the Commonwealth Court. In his petition, Appellant challenged the validity of numerous signatures collected by Candidate as well as the circulator affidavits on several signature petition pages signed by Candidate and her assistants.[2] Based on these challenges, Appellant argued that Candidate's nomination petition did not contain one thousand valid signatures from electors throughout the Commonwealth or one hundred valid signatures from electors in each of five counties of the Commonwealth, as required by Section 912.1(10) of the Election Code, 25 P.S. § 2872.1.[3]

The Commonwealth Court conducted a full hearing over the course of several days, and on March 30, 2001, the court issued a memorandum opinion and order directing the Secretary of the Commonwealth to certify that Candidate's name be placed on the ballot for the May 15, 2001 primary election for the Democratic nomination for Judge of the Commonwealth Court. In concluding that certification was proper, the Commonwealth Court first found that Candidate's nomination petition met the quota of one thousand valid signatures because Appellant had not pursued sufficient challenges to the 1,910 signatures on Candidate's petition to bring the total number of signatures below the 1,000 minimum requirement.

As for Appellant's challenge involving the five county requirement, the court noted that Candidate's nomination peti-

2. Under Section 977 of the Election Code, all nomination petitions filed by prospective candidates within the appropriate time before an election shall be deemed valid, unless, within seven days after the last day for filing, a petition is presented to the court specifically setting forth objections and praying that the candidate's nomination petition be set aside. 25 P.S. § 2937.

3. Section 912.1(10) of the Election Code, 25 P.S. § 2872.1, states that a candidate for nomination of the office of Judge of the Commonwealth Court must present a nomination petition with at least one thousand valid signatures of registered and enrolled members of the proper party, including one hundred valid signatures from each of at least five counties in the Commonwealth. 25 P.S. § 2872.1.

tion contained over one hundred signatures from electors residing in each of seven counties and that at least one hundred signatures from electors located in each of the four counties of Allegheny, Beaver, Washington, and Westmoreland had not been challenged by Appellant. Given that Candidate's nomination petition had four counties with over one hundred uncontested signatures, the court observed that in order to prove that Candidate's nomination petition should be set aside for failure to meet the five county requirement, Appellant had to establish that Candidate's nomination petition did not actually contain one hundred valid signatures from electors residing in each of the counties of Erie, Philadelphia, and Montour, i.e., the three remaining counties out of the seven counties that Candidate claimed to have one hundred valid electors' signatures listed in her nomination petition.

Candidate stipulated that several of the signatures from electors in Montour County were invalid and as a result, the court found that her nomination petition contained less than one hundred valid signatures by electors in Montour County. Candidate further conceded that a significant number of signatures by electors in Erie and Philadelphia counties should be removed. After factoring in the signatures conceded by Candidate to be invalid, the Commonwealth Court then reviewed the contested signatures by electors residing in Erie and Philadelphia counties. The court agreed with Appellant that many of the signatures had to be struck from Candidate's nomination petition for various reasons.[4] Nevertheless, in spite of the signatures that were stricken, the court ultimately calculated that Candidate's nomination petition contained 115 valid signatures by electors from Erie County and 110 valid signatures by electors from Philadelphia County. Thus, the court found that Candidate's nomination petition satisfied the five county requirement of Section 912.1(10) of the Election

4. The signatures were stricken by the court based on the following reasons: the signatures were illegible, the signature on the petition did not match the signature on the electors' registration card, the signatures were printed and Candidate did not offer any rehabilitating testimony, or the electors were not registered and Candidate failed to present rehabilitating testimony.

Code as it contained one hundred signatures from six counties. Consequently, the court directed the Secretary of the Commonwealth to certify that Candidate's name be placed on the ballot.

On appeal to this Court, Appellant argues that the Commonwealth Court erred in overruling objections to a total of twenty signatures by electors in Erie County and a total of sixteen signatures by electors in Philadelphia county.[5] We agree with Appellant that eighteen signatures by electors from Erie County and eleven signatures by electors from Philadelphia County must be stricken. As a result, Candidate's nomination petition contains only 97 valid signatures by electors in Erie County and 99 valid signatures by electors from Philadelphia County, thereby falling short of the one hundred valid signatures from five counties needed to place a candidate's name on the ballot.

 In reviewing the order of the trial court concerning the validity of challenges to a nomination petition, our standard of review is whether the findings of fact are supported by substantial evidence, whether there was an abuse of discretion, or whether errors of law were committed. *In re Certificate of Nomination of 143rd Legislative District*, 535 Pa. 2,

5. As a threshold matter, Candidate claims that Appellant lacks standing to object to her nomination petition. In support of her claim, Candidate points to the fact that while the Commonwealth Court did not reach the issue of whether Appellant had standing based on the fact that it had reviewed the merits and found in favor of Candidate, the Commonwealth Court nonetheless noted that Appellant did not present the court with sufficient proof that he was a registered elector at his claimed address. *See In re Nomination Petition of Samms*, 543 Pa. 681, 674 A.2d 240 (1996) (to challenge a nomination petition, one must be registered to vote in the district holding the primary election and be a member of the political party to which the nomination pertains). Upon review, however, we find that the Commonwealth Court made this statement in response to the fact that Appellant provided the court with a poor copy of his registration record from the office of the Chief Registrar of Indiana County, which did not clearly discern his address. Although we agree that Appellant should have provided the court with a clearer copy, the copy offered by Appellant did indicate that he is a registered voter and a member of the Democratic Party. Given these circumstances, we find that Appellant has standing to challenge Candidate's petition.

634 A.2d 155 (1993). The Election Code must also be liberally construed in order to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice. *In re Nomination Petition of Wesley,* 536 Pa. 609, 613, 640 A.2d 1247, 1249 (1994). A party alleging the defects in a nominating petition has the burden of proving such. *In re Nomination Petition of Johnson,* 509 Pa. 347, 502 A.2d 142 (1985); *In re Nomination Petition of Wagner,* 102 Pa. Commw. 174, 516 A.2d 1276 (1986), *aff'd,* 510 Pa. 584, 511 A.2d 754 (1986). Where the court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate. *In re Nomination Petition of Thompson,* 102 Pa.Commw. 110, 120–21, 516 A.2d 1278, 1283 (1984).

Appellant initially claims that the Commonwealth Court failed to strike the names of two electors from Erie County, Lawrence Droney (p. 43, line 2) and Kathleen Sharples (p. 50, line 7), and one name of an elector in Philadelphia County, Stacey Powell (p. 8, line 7), on account of the fact that these three electors printed their names on Candidate's nomination petition, rather than writing their names in cursive. We agree with Appellant that these three names must be removed.

Section 908 of the Election Code directs that all electors shall sign their name to a candidate's nomination petition. 25 P.S. § 2868; *In re Nomination Petition of Silcox,* 543 Pa. 647, 647, 674 A.2d 224, 225 (1996).[6] Electors are required to sign their name to a candidate's nomination petition as a means of preventing forgery and assuring that each elector personally signs the petition with an understanding of what he is signing. Following each election, the registration commission has the duty of comparing a voter's signature upon voting with the voter's signature on file with the district registrar in order to assure that the voter's signature is genuine. 25 P.S. § 961.702. An elector's name will be stricken where the elector prints his name upon a candidate's

6. When interpreting statutes, we note that if "the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

nomination petition so that it does not match his signature on his voter registration card. *In re Nomination Petition of Cooper*, 163 Pa.Commw. 430, 447, 643 A.2d 717, 725 (1994).

■ Here, in overruling Appellant's objection to Lawrence Droney's printed signature, the Commonwealth Court noted that although Mr. Droney had signed his name in cursive on his original registration card in 1947, Mr. Droney was eighty-one years old at the time he printed his name on the petition and his printed signature was consistent with that of an elderly person. While this may be the case, the fact remains that Mr. Droney's printed signature on Candidate's nomination petition did not match his name as signed on his voter registration card and therefore, his name must be removed from the petition. *See In re Cooper*, 163 Pa.Commw. at 447, 643 A.2d at 725.[7]

■ The Commonwealth Court also refused to strike Kathleen Sharples' printed signature. In Kathleen Sharples' case, the court found that although Ms. Sharples' signature had at one time been affixed by adhesive tape to her voter registration card, it had since become unattached from her registration card, thereby making it impossible for the court to compare her printed signature to her registered signature. Given the possibility that Ms. Sharples' printed signature may have matched her signature on her voter registration card, the court declined to remove her printed name from the petition. We disagree, and instead find that the Commonwealth Court erred in failing to strike Kathleen Sharples' printed signature.

■ Initially, we note that electors have a responsibility, as where an elector moves to a new address, to contact the registration commission and obtain a new registration card when their card is damaged or destroyed. In any event, we

7. The Voter Registration Act provides that in the case of filing a notification of removal, an elector who is unable to sign the notification document may affix a mark to the document in the presence of a witness who must also sign the document and acknowledge the mark made by the elector. 25 P.S. § 961.902. We believe that this procedure should also apply to a situation where an elector is unable, because of his age or any other reason, to sign a nomination petition.

find that an elector who prints her name on a nomination petition has not properly signed the petition, as required by the plain language of Section 908 of the Election Code. 25 P.S. § 2868.[8] We believe that there is a discernible difference between a name as printed and a name as signed. A person's name as signed is perceived to be an insignia used by that person to represent herself and generally is made in a manner that is not easily traceable, as in the case of the person's printed name. Given this difference, as well as the importance of insuring the integrity of the election process, we find that in stating that a person must "sign" the nomination petition, the General Assembly intended that a person make that insignia that the person uses to represent herself, rather than print her name. *See* 25 P.S. § 2868; 1 Pa.C.S. § 1921(b). Therefore, absent substantial proof that the person intended her printed name to be her signature, a person may not validly print her name upon a nomination petition. *See e.g., Commonwealth Dep't of Transp. v. Mitchneck,* 25 Pa.Commw. 145, 147–48, 360 A.2d 831, 832 (1976) (a typewritten name cannot be a person's signature without proof that the person intended the typewritten name to act as his signature). Accordingly, because her signature was printed, we strike Kathleen Sharples' name from the petition.

■ Appellant also challenges Stacey Powell's signature on the basis that it was printed. The Commonwealth Court accepted Ms. Powell's printed signature on the petition because Ms. Powell had both printed her name and signed her name in cursive on her registration card and Candidate's handwriting expert testified that Ms. Powell's printed signature on the petition was similar to her printed signature on her registration card. However, in light of our finding that an elector may not print her name on a nomination petition, Stacey Powell's signature must be stricken.

8. Section 908 specifically provides that "[e]ach signer of a nomination petition shall sign but one such petition ... and shall declare therein that he is a registered and enrolled member of the party designated in such petition." 25 P.S. § 2868.

■ Next, Appellant argues that the Commonwealth Court improperly accepted the signatures of seven electors from Erie County and nine electors from Philadelphia County whose addresses on Candidate's nomination petition did not match the addresses stated on their voter registration cards. We agree.

■ A person is required to indicate, under penalty of perjury, his or her place of residence in order to register as an elector. 25 P.S. § 961.501. Furthermore, when electors move either within the same county or to another county within the Commonwealth, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. 25 P.S. §§ 961.901–961.902. Indeed, the registration commission must verify the residences of registered electors to insure that the qualified elector actually resides at the address listed on his voter registration card. 25 P.S. §§ 961.906–961.907; *In re Nomination Petition of Wesley,* 536 Pa. at 615, 640 A.2d at 1249; *In re Pittsburgh Home Rule Charter,* 694 A.2d 1128, 1131–32 (Pa. Commw.1997). Thus, absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act. *Id.,* 536 Pa. at 612–14, 640 A.2d at 1249; *In re Pittsburgh Home Rule Charter,* 694 A.2d at 1131–32.

■ In upholding the signatures at issue in the instant case, the Commonwealth Court relied upon *In re Nomination Petition of Cooper,* 163 Pa.Commw. at 449, 643 A.2d at 726, where the court found that even if an elector's address is not identical to that found on the elector's registration card, the elector's signature should not be struck without an allegation that the elector does not actually live at the address on the petition. Based on *In re Cooper,* the court below refused to strike the signatures of electors whose addresses on the petition did not match their registered addresses because

Appellant did not present any evidence to dispute that those electors resided at the address they listed on the petition. As indicated above, however, both this Court and the Commonwealth Court have issued decisions since *In re Cooper* that have found that electors must notify authorities of a change in address in order to remain a qualified elector. *In re Wesley*, 536 Pa. at 615, 640 A.2d at 1247; *In re City of Pittsburgh Home Rule Charter*, 694 A.2d at 1132. Where electors fail to properly notify authorities of a change in address, those electors' voter registrations are terminated and thus, they are clearly disqualified from signing a nomination petition as a registered and enrolled elector. 25 P.S. § 2868; *In re Wesley*, 536 Pa. at 615, 640 A.2d at 1247; *In re City of Pittsburgh Home Rule Charter*, 694 A.2d at 1132. Accordingly, the Commonwealth Court erred in failing to strike the signatures of those seven electors from Erie County and those nine electors from Philadelphia County whose addresses on the nomination petition do not to correspond with their registered addresses.

■ Appellant further challenges the Commonwealth Court's findings that Candidate presented sufficient evidence to prove that the signatures of two electors from Erie County and nine signatures by electors in Philadelphia County were genuine. Upon reviewing the evidence regarding the signatures that Appellant challenges, we find that there was substantial evidence provided by Candidate to substantiate the Commonwealth Court's acceptance of the signatures by all seven electors from Erie County and by eight of the electors from Philadelphia County. However, we agree with Appellant that Candidate failed to offer sufficient evidence to rebut that evidence presented by Appellant that the signature of one elector from Philadelphia County, that of Lawrence McNish (p. 8, line 15), was not genuine.

Here, both Candidate's handwriting expert, John S. Gencavage, and Appellant's handwriting expert, Michelle Dresbold, testified concerning the authenticity of Lawrence McNish's signature. The Commonwealth Court found that Mr. Genca-

vage's testimony was more credible than that of Ms. Dresbold, who testified regarding Mr. McNish's signature as follows:

Q: Do you have an opinion regarding the authenticity or genuineness of the signature on the nomination petition after making a comparison with the voter registration card?

. . . .

A: My opinion is that the—Line 15, Lawrence McNish, on Page 8 does not match the voter registration card of Lawrence McNish. The reasons for that are on page—on Line 15, it's a slow, drawn handwriting. On the voter registration card, it's a fast handwriting and a stylized handwriting.

Q: What does that mean, fast and slow?

A: When you write your natural handwriting, since you're very used to writing your own signature you write quickly. When you're writing it on-

Q: How is that reflected in style, though?

A: When you're writing—okay. When you're writing a name that you're not as familiar with, you will go slower because it's not as natural. When you look at a handwriting that's natural, it has a free flow to it. When you look at a handwriting that is less—that is not natural it will have a tighter, more drawn appearance about it.

So on Lawrence McNish on the voter registration you have a very fast, free handwriting. You have an S that's made almost like an 8 S that's stylized into his H which has a nice loop about it. There's a completely different S on the petition and a completely different H. You have a C in McNish on the voter registration card that is high and up in the air. You have a C on the petition that is low and touches the line. You also have at the end of Lawrence an E on the petition that stops abruptly. You have an E on the voter registration card that is long and drawn out to a point.

You also have a break, meaning there is skips in handwriting, on the petition in the name Lawrence. You have an AW. Then you have a break where the person starts the REN. Then you have a break. Then you have a CE. On the

voter registration card the name—the AWRCE is all continuous with absolutely no breaks. Let's see.

. . . .

The M, on the voter registration card starts with a fine, thin point. And you have an M on the petition that starts abruptly with a heavier point.

N.T., 3/27/01, at 81–83. In defense, John S. Gencavage testified accordingly:

Q: Mr. Gencavage, we're on Page 8, Line 15, the signature of Lawrence McNish. There has been testimony by the petitioner's expert that this is not a genuine signature. Do you have any opinion on that?

A: Well, I really couldn't—can't reach a conclusion on it. I'm looking at the line quality. I'm looking at some erratic movements and so forth in the signature card, and I'm looking at a much neater signature on the petition. I would need additional standards before I could make a statement concerning that signature.

Q: So do you believe that it is not the elector or you just can't tell?

A: I can't tell.

N.T., 3/27/01, at 130.

Comparing the testimony elicited by these two experts, we believe that Ms. Dresbold presented substantial evidence to support Appellant's claim that the signature of Mr. McNish was improper. On the other hand, we find that Mr. Gencavage's opinion as to whether Mr. McNish's signature was genuine was completely equivocal. Such equivocal testimony is simply inadequate to support the Commonwealth Court's determination that Candidate sufficiently proved that Lawrence McNish's signature was genuine, and therefore, we strike Lawrence McNish's signature from the petition. *See In re Nomination of 143rd Legislative District,* 535 Pa. at 8, 634 A.2d at 158; *Feinberg, D.D.S. v. Unemployment Compensation Board of Review,* 160 Pa.Commw. 524, 529, 635 A.2d 682, 684 (1993) (testimony which is so uncertain, equivocal, or

ambiguous to support the findings of a trial judge is not substantial as a matter of law).

Finally, Appellant claims that the Commonwealth Court erroneously failed to strike nine signatures of electors from Erie County, which were listed on two pages of Candidate's nomination petition, because Candidate signed the circulator affidavit on the back of these pages and she did not have the requisite personal knowledge, as prescribed by the Election Code, to affirm those signatures. We agree with Appellant that the nine signatures from Erie County challenged by Appellant should be struck.

Section 909 of the Election Code provides in relevant part:

> Each sheet shall have appended thereto the affidavit of the circulator of each sheet, setting forth-(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State ... (b) his residence ... (c) that the signers thereto signed with the full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of the affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State.

25 P.S. § 2869. The language in Section 909, therefore, unambiguously requires that the circulator affirming the petition be aware of five criteria about each individual signer: (1) the signer signed the petition with full knowledge of its contents; (2) the signer's address is correct; (3) the signer resides in the county in the affidavit; (4) the signer signed the petition on the date set forth; and (5) to the best of the circulator's knowledge and belief, the signer was a qualified elector and a member of the party claimed on the petition. In order to know this information, it seems clear that the circulator needs to be present when each signer agrees to sign the petition.

It appears, however, that case law has relaxed the standard set forth by Section 909. In these cases, courts have found that a circulator is able to affirm a petition pursuant to Section 909 where the circulator does not personally obtain the signature or speak with each signer as long as the circulator claims to know the factors outlined in Section 909 or the circulator is in the general vicinity when the signatures are obtained by someone else. *See In re Nomination Petition of Martin,* 435 Pa. 446, 257 A.2d 247 (1969) (circulator testified that all signers did not sign in his presence, however, as he claimed that he knew every signer, every signer's address, and that all signers were registered electors, circulator met statutory criteria); *In re Nomination Petition of Bunk,* 120 Pa.Commw. 495, 548 A.2d 1287, 1289 (1988) (candidate had sufficient knowledge to affirm signatures collected by assistants as he was always at most a few houses away from assistants and he reviewed every signature obtained by assistants). Indeed, in *In re Nomination Petition of DeFino,* 25 Pa.Commw. 646, 649, 362 A.2d 467, 468 (1976), the Commonwealth Court noted that "although it would be preferable for the individual who has actually circulated the petition to make the required affidavit," it is not specifically required by Section 909. *Id.*

We disagree with this relaxed standard. Although Section 909 does not explicitly state that the circulator must be present at the time signatures are obtained, the circulator clearly must be present when an elector signs the petition in order to truly be aware of the criteria listed in Section 909. Accordingly, based on the criteria listed in Section 909, which a circulator must know in order to affirm the petition, we believe that the General Assembly intended that the circulator affirming the petition be present when each elector signs his name to that petition. From this point hence, therefore, signatures shall be removed from a petition if the circulator who has affirmed the petition was not in the presence of an elector as the elector signed the petition.

Here, Appellant claims that Candidate did not have sufficient knowledge pursuant to Section 909 to affirm page 28, lines 11 through 29, and page 43, lines 13 through 20. Candi-

date testified concerning her involvement in the collection of those signatures on pages 28 and 43 as follows:

Q: Page 28. There are 29 lines completed on that page?

A: Yes.

. . . .

Q: Did you circulate and personally obtain each and every signature on that page?

A: I have a recollection of obtaining some names but not all the names.

Q: Can you tell me which ones you did obtain?

A: 1 through 10 I obtained. I have a recollection of being on Pin Oak Road. . . . I looked for the notes on this, I can't find it, so I can only tell you what my recollection is, and I don't have a recollection of actually collecting any names there. . . .

Q: I'm trying to understand. Do you have any personal knowledge regarding lines 11 through 29 of page 28?

A: I have some knowledge. I just don't have—my recollection for that day is not clear, and so I'm not sure how to answer the question.

Q: *What personal knowledge do you have for lines 11 through 29?*

A: *I was in the neighborhood, I went door to door, and I remember collecting a couple of signatures, but I don't remember collecting this many signatures. That's my personal knowledge.*

Q: Page 43, my notes show there are 20 lines of signatures. . . . Did you personally circulate that petition and obtain each and every signature on that page?

A: I definitely circulated—I obtained all the signatures in green, and then the signatures in blue. I was there. The reason I'm hesitating is that this was a Friday, and if you will notice there's blue writing and I had someone with me circulating petitions.

Q: Who was that?

A: Andy McGraw, and he signed the circulator to petitions, and he had a blue pen and I had a green pen, and I do remember at some point in time of us both having the same colored pens, and I said this is going to be a problem if we have to figure this out later.

I can tell you that on that day when he and I went together circulating petitions, we went side by side or across the street and we never left each other's sight. And the most that could have happened is that he could have had this clipboard, our clipboards could have gotten mixed up or pens could have gotten mixed up. But I physically went door to door, and the most I could have been was across the street or next door to this person signing this.

. . . .

Q: . . . Were you in the presence of the signer and personally observe them signing your nomination petition?

. . . .

A: As to the green I was, and as to the blue, I could have been.

. . . .

Q: *I'm looking at lines 13 through 20,* and it's still not clear to me. You haven't stated one way or another whether you physically observed them signing their name, if you remember?

A: *My memory isn't clear to any of those particular people for that particular question.*

N.T., 3/28/01, at 91–97 (emphasis added). Upon reviewing this testimony, we agree with Appellant that Candidate lacked the requisite knowledge prescribed by Section 909 to affirm the signatures on lines 11 through 29 on page 28 and on lines 13 through 20 on page 43. As Candidate could not recall whether she collected the signatures on lines 11 through 29 on page 28, Candidate did not have sufficient knowledge of the criteria in Section 909 to affirm those electors' signatures. Therefore, the seven signatures on lines 11 through 29 listed on page 28 challenged by Appellant are struck.

Furthermore, Candidate testified that she could not remember any of the electors who signed on lines 13 through 20 on

page 43. In fact, according to Candidate's testimony, it was very likely that Mr. McGraw gathered those signatures and Candidate never even met those electors. Thus, based on Candidate's inability to recollect whether she or Mr. McGraw obtained the signatures on lines 13 through 20 on page 43 and our finding that a candidate must be personally present at the time an elector signs a nomination petition, we likewise strike the two signatures on page 43 challenged by Appellant.

As a result of our finding that eighteen signatures by electors from Erie County must be stricken and eleven signatures by electors from Philadelphia County must be stricken, Candidate's nomination petition contains less than one hundred valid signatures from both of these counties.[9] Without these two counties, Candidate's nomination petition fails to include one hundred signatures from electors residing in five counties of the Commonwealth as required by Section 912.1(10) of the Election Code. Accordingly, the order of the Commonwealth Court directing the Secretary of the Commonwealth to certify that Candidate's name be placed on the ballot for the May 15, 2001 Democratic primary election for Judge of the Commonwealth Court is reversed.

Mr. Chief Justice FLAHERTY and Madame Justice NEWMAN did not participate in the consideration or decision of this appeal.

Mr. Justice SAYLOR filed a concurring opinion in which Mr. Justice CASTILLE joins.

SAYLOR, Justice, Concurring.

Although I join the majority's disposition, I would not presently overrule existing Commonwealth Court jurispru-

9. As explained earlier in this opinion, the Commonwealth Court concluded that Candidate's nomination petition listed 115 valid signatures by electors in Erie County and 110 valid signatures by electors in Philadelphia County. We have determined that an additional eighteen signatures by electors in Erie County and eleven signatures by electors in Philadelphia County must be removed. Consequently, Candidate's petition contains 97 valid signatures by electors in Erie County and 99 valid signatures by electors in Philadelphia County.

dence concerning the requirements for a valid circulator's affidavit. In this regard, I note that Appellant does not challenge the prevailing framework, but rather, asserts that the candidate lacked the degree of personal knowledge, as required under the existing decisional law, to support her certification as circulator with respect to certain signatures obtained in Erie County. *See* Brief for Appellant at 29 (stating that "Objector recognizes that '. . . while it would be preferable for the individual who has actually circulated the petition to make the required affidavit, this is not specifically required by the Code, and it is sufficient if the affiant has knowledge of the facts set out in Section 909' ") (citation omitted). The limited flexibility afforded under the construct presently applied in the Commonwealth Court appears calculated to effect the principle that the Election Code is to be liberally construed in favor of ballot access.

Thus, with regard to signatures obtained in Erie County appearing on pages 28, lines 11 through 29, and 43, lines 13 through 20, of the nominating petition, I would merely hold that the record fails to establish that the circulator (in this instance the candidate) possessed the requisite degree of personal knowledge to support her affidavit.

Justice CASTILLE joins this concurring opinion.