In Re: NOMINATION PETITION OF Lawrence M. FARNESE, Jr. for the Democratic Nomination for Senator in the General Assembly from the 1st Senatorial District in the Primary of April 22, 2008.

Keith Olkowski and Theresa
A. Paylor, Petitioners.

Commonwealth Court of Pennsylvania.

Heard March 7, 2008.
Decided March 14, 2008.
Publication Ordered March 24, 2008.

---

Samuel C. Stretton, West Chester, for petitioner.

Clifford B. Levine, Pittsburgh, for respondent.

## OPINION BY Judge FRIEDMAN.

Keith Olkowski and Theresa A. Paylor (together, Objectors) have filed a "Petition to Set Aside the Nomination Petition of Lawrence M. Farnese, Jr. for the Democratic Nomination for Senator in the General Assembly from the 1st Senatorial District in the Primary Election to be Held on April 22, 2008" (Petition). We deny the Petition.

In their Petition, Objectors aver that: (1) Lawrence M. Farnese, Jr., (Farnese)

filed a Nomination Petition, seeking to be included on the Democratic primary ballot as a candidate for State Senator from the 1st Senatorial District; (2) the forty-nine-page Nomination Petition contains 1,778 signatures, but at least 1,500 of those signatures are invalid, leaving Farnese short of the requisite 500 valid signatures; (3) some of the pages should be stricken in their entirety because many of the signatures are obviously false, fraudulent and/or written in the hand of a person other than the elector, such that the Circulator Affidavit is invalid; and (4) page 33 of the Nomination Petition should be stricken in its entirety because the signature of the alleged circulator is misspelled and does not match his voter registration card, which means that the notarization is invalid.

This court issued a Case Management Order, scheduling a hearing for March 6, 2008, and requiring that the parties submit stipulations, expert reports and witness lists to the court by March 3, 2008. Farnese subsequently filed a motion for continuance with the consent of Objectors. Following a telephone conference on the matter, this court rescheduled the hearing for March 7, 2008, and extended the deadline for the filing of stipulations until March 5, 2008.

On March 5, 2008, Objectors filed a Proposed Stipulation, indicating that: (1) Farnese has withdrawn pages 1, 3, 4, 5, 8, 9, 16, 19, 22 and 29 through 41 of the Nomination Petition;[1] (2) Objectors have withdrawn their global challenge to pages 2 and 18;[2] (3) the parties have agreed that

---

1. Exhibit C of the Proposed Stipulation is a March 4, 2008, letter from Farnese to Objectors, stating that "we are hereby withdrawing certain pages . . . specifically pages: 1, 3, 4, 5, 8, 9, 16, 19, 22, and 29 through 41 (both inclusive)."

2. Objectors had challenged pages 2 and 18 because the circulator signed her name as Laurie Fitzpatrick, but she is registered as Laurie J. Fitzpatrick. We note that the attachment to the Proposed Stipulation does not reflect Objectors' withdrawal of this objection.

199 signatures are invalid; (4) the parties cannot agree on 389 signatures; and (5) the pages with alleged defects in the Circulator Affidavits contain 571 signatures. Objectors attached a line-by-line summary for each page of the Nomination Petition, indicating whether a signature was valid, invalid or disputed and whether there was a full-page challenge based on defects in the Circulator Affidavit. Objectors included the pages withdrawn by Farnese in the summary, explaining that they intend to use these pages in other full-page challenges and that the case ultimately will rest on the court's ruling on Objectors' ability to rely on the withdrawn pages.[3]

During a telephone conference on March 5, 2008, Objectors informed the court that they can prevail only if this court were to rule that, if a particular circulator failed to follow the dictates of *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001), with respect to one page of the Nomination Petition, then all pages circulated by that person should be stricken.[4] Farnese stated that he would file a motion in limine to preclude Objectors from introducing evidence at the hearing relating to the withdrawn pages.

On March 6, 2008, Farnese filed his own proposed line-by-line stipulations. Farnese's proposed stipulations do not include the withdrawn pages and do not reflect Objectors' full-page challenges to non-withdrawn pages based on alleged defects in the Circulator Affidavits on the withdrawn pages. Farnese also filed: (1) a motion in limine to preclude evidence concerning the notarization of page 33, one of the withdrawn pages; (2) a motion in limine to preclude the introduction of evidence and the questioning of witnesses regarding the withdrawn pages; and (3) a motion to strike challenges of "invalid signature" as lacking in specificity[5] and to strike a challenge that the circulator of page 25 resides outside the district.

At the hearing on March 7, 2008, the parties presented their proposed stipulations. Objectors indicated that, as a result of Farnese's withdrawal of pages 1, 3, 4, 5, 8, 9, 16, 19, 22 and 29 through 41 of the Nomination Petition, 844 signatures remain. According to Objectors, Farnese stipulated that 143 of the 844 signatures are invalid, leaving 701 signatures. Objectors then offered as Exhibit 1 a chart showing that 324 of the 701 individual signatures on pages 2, 6, 7, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 42, 43, 44, 45, 46, 47, 48 and 49 are disputed. However, Objectors' chart incorrectly listed 31 individual disputed signatures on page 19, a page that had been withdrawn; thus, the number of individual disputed signatures proposed by Objectors actually is 293 (324 − 31 = 293). On the chart,

3. Objectors also filed copies of investigative reports and affidavits related almost exclusively to defects in the withdrawn pages.

4. Objectors further argued that, if a particular notary improperly notarized a Circulator Affidavit, then all pages notarized by that person should be stricken. However, Farnese pointed out in his subsequent motion in limine that, in their Petition, Objectors did not challenge any pages other than page 33 based on a defective notarization.

5. This court eventually ruled that, to the extent that "invalid signature" lacked specifici-

ty, Objectors could request leave to amend the objection to include any challenge to the signature itself, e.g., illegible, printed, use of nickname or use of initial, so long as Farnese had the opportunity to rehabilitate the signature. *See In re Nomination Petition of Brown*, 846 A.2d 783 (Pa.Cmwlth.2004). This court stated that Objectors could not amend the objection to include a non-signature type of challenge. *But see In re Nomination Petition of Rogers*, 908 A.2d 942 (Pa.Cmwlth.2006) (allowing objectors to amend "illegible signature" challenges to "not registered at the address" challenges).

Objectors show that they seek to strike 308 signatures based on full-page challenges. However, these 308 signatures include the 38 total signatures on page 19, a page that had been withdrawn; thus, the number of signatures Objectors seek to strike based on full-page challenges is actually 270 (308 − 38 = 270). Finally, the chart shows that Objectors stipulate to 377 valid signatures. However, this number includes seven valid signatures from page 19, which had been withdrawn; thus, Objectors actually stipulate to 370 valid signatures (377 − 7 = 370).[6]

Objectors later conceded that they would not be able to prevail on half of the 324 individual signature challenges, or 162 signatures (324/2 = 162). Thus, if Objectors were to rely solely on their individual signature challenges, Objectors believe that Farnese would have approximately 532 valid signatures (370 + 162 = 532), more than the requisite 500. Objectors asserted that they could not proceed if this court were to grant Farnese's motion in limine to preclude evidence relating to the withdrawn pages of the Nomination Petition because those withdrawn pages serve as the basis for Objectors' global challenges.

In that regard, Objectors argued that they should be permitted to present evidence relating to the withdrawn pages and that they should be permitted to question witnesses who circulated both withdrawn and non-withdrawn pages regarding their understanding of the Circulator Affidavit. Objectors argued that, if the circulators of the withdrawn pages did not understand their legal obligations as circulators, then their Circulator Affidavits on the non-with-

drawn pages must be deemed false and the pages stricken in their entirety. After argument on the matter, this court granted Farnese's motion in limine to preclude any evidence and questioning relating to the withdrawn pages.

Objectors next argued that they should be permitted to use the withdrawn pages to impeach the testimony of the circulators regarding their knowledge of the criteria for circulators. Farnese countered that Objectors could ask the circulators about the circulation of the non-withdrawn pages, but using the withdrawn pages to impeach testimony was an attempt to circumvent this court's ruling. This court then reiterated that there would be no testimony or inference regarding the withdrawn pages. Given this court's ruling, Objectors indicated that they could not prevail and declined to proceed.

This court's ruling was based on statutory law, case law and the rules of evidence. As indicated above, Objectors sought to introduce evidence regarding the withdrawn pages because of their position that, if the Circulator Affidavit on a withdrawn page was defective, then every page circulated by the person should be stricken. This is not correct.

Under section 977 of the Pennsylvania Election Code (Election Code),[7] when objections are filed to a nomination petition, this court may set aside the petition if it finds, *inter alia*, that the petition is defective under section 976 of the Election Code.[8] Section 976 of the Election Code states, "The invalidity of any sheet of a nomination petition . . . shall not affect the

---

6. Farnese disagreed with Objectors' numbers. Farnese believed that 407 signatures either were not challenged or were stipulated to be valid. Farnese also believed that he could prevail on 222 of the disputed signatures, giving him 629 valid signatures.

7. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

8. 25 P.S. § 2936.

validity of such petition ... if a sufficient petition ... remains after eliminating such invalid sheet." 25 P.S. § 2936. In other words, in determining whether to set aside a nomination petition, this court must consider each sheet separately.

With respect to Circulator Affidavits, section 2869 of the Election Code requires that "[e]ach sheet shall have appended thereto the affidavit of the circulator of each sheet...." 25 P.S. § 2869. Significantly, this provision does **not** permit the circulator of multiple sheets of a nomination petition to attach only one affidavit to those sheets as a group. Inasmuch as each individual sheet contains its own Circulator Affidavit, it would be improper to strike a particular sheet based on the invalidity of the Circulator Affidavit on another sheet.

Indeed, in *In re Pittsburgh Home Rule Charter,* 694 A.2d 1128 (Pa.Cmwlth.1997), the objectors urged this court to strike all pages circulated by a person because the number of invalid signatures on his pages raised serious questions about the integrity of the Circulator Affidavits. This court declined to do so, stating that, although 20% of the signatures on the circulator's sheets were disqualified, there is no proof that the remaining 80% are invalid. *Id.* Here, if we would have adopted Objectors' position, we would have stricken **admittedly** valid signatures on one page based on a defective Circulator Affidavit on another page. Quite clearly, that is not permissible.[9]

Considering relevant statutory provisions and case law, we concluded that any evidence relating to the withdrawn pages would have been irrelevant to whether the Circulator Affidavits or signatures on the non-withdrawn pages were valid. Evidence that is not relevant to the matter before a court is not admissible. Pa. R.E. 402.

With respect to Objectors' request to use the withdrawn pages to impeach the credibility of witnesses who circulated both withdrawn and non-withdrawn pages, a party may not attack the character of a witness for truthfulness by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct. Pa. R.E. 608(b)(1). Thus, here, it would have been improper for Objectors to use a witness's specific conduct with respect to a withdrawn page to attack the truthfulness of the witness with respect to a non-withdrawn page.

Moreover, evidence of other acts, i.e., bad acts, is not admissible to prove the character of a person in order to show action in conformity with those bad acts.[10] Pa. R.E. 404(b)(1). The rationale for such a rule is that the relevance of other bad acts is usually outweighed by the potential for creating unfair prejudice. Pa. R.E. 404, *Cmt.* Thus, here, it would have been improper for Objectors to use a witness's alleged bad act with respect to a withdrawn page to prove that the witness acted in the same manner with respect to a non-withdrawn page.

Because Objectors declined to proceed with their case, conceding that they could not prevail without their ability to rely on

9. As this court stated in *Rogers,* 908 A.2d at 947, an objector bears the burden of proving the invalidity of "each individual" signature challenged. *See Flaherty* (suggesting that a Circulator Affidavit may be false with respect to one signature, but true with respect to other signatures on the same page).

10. To the extent Objectors argue that the circulators of the withdrawn pages appear to have engaged in fraud, this court has stated that allegations of a pattern of fraud are immaterial in a case involving objections to nomination papers and that such allegations will be disregarded. *Rogers.*

the pages that Farnese withdrew from his Nomination Petition, Objectors' Petition is denied.

## ORDER

AND NOW, this 24th day of March, 2008, it is hereby Ordered that the opinion filed March 14, 2008, in the above-captioned matter shall be designated Opinion rather than Memorandum Opinion, and it shall be reported.