**In Re: Nomination Petition of Joseph VODVARKA as a Candidate of the Democratic Party for the United States Senate in the Primary Election of May 18, 2010.**

**Objection of: Joseph A. Sestak, Jr.**

Commonwealth Court of Pennsylvania.

Heard April 8, 2010.

Decided April 13, 2010.

Amended April 15, 2010.

Publication Ordered May 4, 2010.

James M. Parks and Jared G. Solomon, Philadelphia, for petitioner.

Charles A. Pascal, Leechburg, for respondent.

## OPINION BY Judge LEAVITT.

Before this Court is a petition filed by Joseph A. Sestak, Jr. (Objector) to set aside the Nomination Petition for the Office of United States Senator filed by Joseph Vodvarka (Candidate). Candidate seeks to appear on the ballot in the primary election scheduled for May 18, 2010. Objector, also a Democratic Party candidate for that office, contends that Candidate's nomination petition lacks the minimum number of signatures required by law to appear on the primary election ballot. Concluding that Objector's contention has merit, the Court must set aside Candidate's Nomination Petition.

■ To appear on the primary election ballot as a candidate for the office of United States Senator, Section 912.1(2) of the Pennsylvania Election Code (Election Code)[1] requires 2,000 valid signatures of registered electors who are members of the party whose nomination is sought. Candidate filed a nomination petition with the Department of State consisting of 154 pages and showing 2,590 signatures. Each line on a nomination petition contains a space where the following information must be provided: signature of elector, printed name of elector, place of residence (including house number; street or road; city, borough or township) and date. All this information must be filled out in the hand of the signing elector. *In re Nomination Petition of Silcox*, 543 Pa. 647, 650, 674 A.2d 224, 225 (1996).

■ Objector's petition challenged 1,165 signatures in the nomination petition as invalid for a variety of reasons. These reasons included: lack of cursive signature by elector; illegible signatures; use of nicknames or initials; incomplete address or use of dittos; incomplete date or use of dittos; a signature made after the circulation date on the circulator's affidavit; deletions made by Department of State; address out of county; signature or information written in the hand of another; elector not registered in county;

---

1. Section 912.1(2) of the Act of June 3, 1937, P.L. 1333, *as amended*, states:

   Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:

   \* \* \*

   (2) United States Senate: Two Thousand.

   25 P.S. § 2872.1(2). Section 912.1(2) was added by the Act of December 12, 1984, P.L. 968.

elector's signature varies from registration card; elector's address varies from registration card; multiple signatures by same elector; elector not a member of the Democratic Party; and lack of printed name by elector.

Candidate stipulated that many signatures on his petition were invalid for a variety of reasons, leaving a total of 2,172 signatures on Candidate's nomination petition. At the hearing, Objector made facial challenges to 97 of the 2,172 total signatures. The facial challenges were those that could be decided without any evidence other than the nomination petition itself because, for example, information required to be on the nomination petition was missing, such as a street number or date of signature. Candidate agreed to 54 of Objector's facial challenges.[2] However, Candidate then offered evidence to rehabilitate six of the 54 signatures with affidavits from the signing electors, which (1) explained that they had erroneously written a zip code instead of a date and (2) provided the date on which they signed the nomination petition.[3] The Court accepts this rehabilitation evidence. The Court's finding means that 48 of Objector's facial challenges have merit. Thus, before considering further evidence and without deciding the remainder of Objector's facial challenges, the total number of valid signatures on Candidate's nomination petition is 2,124.

The parties have stipulated that in 229 instances, the elector declared a residence on the nomination petition at an address that is different from the address contained in the county's voter registration records. Objector asserts that absent extraordinary circumstances, which is the Candidate's burden to prove, all 229 of these signatures must be stricken. Candidate responds that for all 229 of these signatures, the elector who signed the petition is still registered in the county, albeit at a different address. Candidate believes that if the Court finds, as fact, that the elector's signature on the nomination petition and on the voter registration record is the same, or similar, the signature can be counted as valid notwithstanding the discrepancy in address. The burden then shifts, according to Candidate, to Objector to prove that Candidate's proffered rehabilitation should be rejected for some reason. The parties agree that if the Court accepts Objector's legal position, the 229 signatures in question must be stricken from Candidate's nomination petition.

The Court begins with a review of the principles applicable in a challenge to a nomination petition. The Election Code is to be liberally construed so as not to deprive an individual of the right to run for office or the voters of their right to elect a candidate of their choice. *In re Nomination Petition of Wesley*, 536 Pa. 609, 613, 640 A.2d 1247, 1249 (1994). It is equally well-settled that a party alleging defects in a nomination petition has the burden of proving such. *In re Johnson*, 509 Pa. 347, 354, 502 A.2d 142, 146 (1985).

---

**2.** Candidate agreed to facial challenges made to signatures appearing on the nomination petition as follows:

Page 6, line 14; page 9, lines 22 and 36; page 10, line 50; page 11, line 45; page 14, line 12; page 15, line 48; page 16, line 26; page 17, lines 12 through 29 and lines 44 through 50; page 18, line 9; page 19, line 30; page 22, lines 6 and 25 through 27; page 23, lines 4 and 41; page 24, line 37; page 25, lines 15 and 42; page 30, lines 9 and 30; page 32, line 11; page 34, line 28; page 40, line 28; page 53, lines 23 and 24; page 67, line 3; page 142, line 8; and page 146, line 6.

**3.** The rehabilitation evidence related to the following signatures:

Page 17, lines 16, 17, 18, 21, 22 and 24.

In the past, a signature was not necessarily stricken from a nomination petition where the elector declared a residence on the nomination petition at an address different from that found in the voter registration records. *See, e.g., In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717, 726 (1994). The discrepancy could lead to a signature strike, however, if the objector could show that the elector did not live at the residence declared on the petition or that the declared residence was not located in the district. *Id.*

█ The law changed with our Supreme Court's ruling in *In Re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001). The Supreme Court held that

*absent extraordinary circumstances,* electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a

nomination petition unless they have completed the removal notice required by the Voter Registration Act....

*Id.* at 682, 770 A.2d at 333 (emphasis added) (citation omitted). In short, a signature from an elector whose declared residence on the nomination petition differs from that on the voter registration records must be stricken, unless the elector has completed a removal notice.

The removal notice referenced in *Flaherty* is a filing made by an elector who moves within the same county or to another county in Pennsylvania. It informs the appropriate registration commission of the elector's new address. 25 Pa.C.S. § 1501(a)(2).[4] Nevertheless, Section 1501(b)(2) permits an elector who has moved to a new residence in the same county, but not yet filed a removal notice, to vote *once* at the elector's *former* polling place. 25 Pa.C.S. § 1501(b)(2).[5] To vote,

4. It states:

(2) The notice shall be printed upon cards suitable for mailing, addressed to the office of the commission. The notice shall provide the following information:
(i) The address of present residence, including municipality.
(ii) The address of last registration, including municipality.
(iii) Date of removal to present residence.
(iv) Signature.
25 Pa.C.S. § 1501(a)(2).

5. It states:

*A registered elector who removes residence from one place to another within the same county* and who has not yet filed a removal notice with the commission *shall be permitted to vote once at the elector's former polling place* following removal *if, at the time of signing the voter's certificate, the elector files with the judge of election a signed removal notice properly filled out.* Removal notices under this paragraph shall be returned to the commission with the voting check list, and the commission shall proceed to transfer the registration of the elector under section 1502 (relating to transfer of registration) and shall promptly update informa-

tion contained in its registration records. *A registered elector may vote in the election district of the elector's former residence not more than one time following the elector's removal.*
25 Pa.C.S. § 1501(b)(2) (emphasis added). The pre-codified provision stated:

An elector who removes residence from one place to another within the same county and who has not yet filed a removal notice with the commission *shall be permitted to vote at the election next following removal if, at the time of signing voter's certificate, the elector files with the judge of election a signed removal notice* properly filled out. Removal notices under this paragraph shall be returned to the commission with the voting check list, and the commission shall proceed to transfer the registration of the electors under section 902.

Section 901(b)(2) of the Voter Registration Act, Act of June 30, 1995, P.L. 170, *formerly* 25 P.S. § 961.901(b)(2), repealed by the Act of January 31, 2002, P.L. 18, No. 3, § 5(2) (emphasis added).

In sum, the two provisions are nearly identical. Both allow an elector who has moved to vote at his former polling place so long as

the elector must file the removal notice with the judge of election when he appears to vote at his former polling place. *Id.*

The Voter Registration Act also provides procedures for striking names from the voter registration records to "protect the integrity of the electoral process and to ensure the maintenance of accurate and current registration records." 25 Pa.C.S. § 1901(a). To that end, the Secretary of State must establish a program to identify electors who have moved and notify those electors that their addresses will be changed on the registration records. 25 Pa.C.S. § 1901(b). In conjunction with the Secretary's program, the county registration commission must identify electors who do not reside "at the registered address. . . ." 25 Pa.C.S. § 1901(b)(2)(ii). However, the commission will not cancel the registration of such an elector, unless the elector:

(A) has failed to respond to a notice described in paragraph (2); [6] and

(B) has not voted nor appeared to vote and, if necessary, corrected the commission's record of the elector's address in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

25 Pa.C.S. § 1901(d)(1)(ii). In sum, an elector will not be removed from the voter registration rolls until the county commission follows the procedures in Section 1901(d) for culling the voter registration records.

Candidate argues that until an elector's name is removed from the county voter registration records in accordance with the procedures set forth in Section 1901, that elector remains a qualified elector and authorized to sign a nomination petition, so long as he continues to reside in the same county. In support, he directs this Court to *In re Nomination Petition of Brown,* 846 A.2d 783 (Pa.Cmwlth.2004). In *Brown,* this Court refused to strike a signature from a nomination petition even though the objector showed a discrepancy between the elector's address shown on the nomination petition and that shown in the voter registration records. Under *Flaherty,* the signature should have been stricken. This Court did not do so, reasoning that *Flaherty* was decided before the Voter Registration Act was codified in 2002. It held:

> [T]he addresses challenged here as different from those shown on the registrations . . . have no legal effect on the signers' status as a qualified and registered elector within the political district. . . . Moreover, the different addresses do not prevent the signers from voting at their former polling places in the primary election. Thus, Brown would prevail.

*Id.* at 787 (citation and footnote omitted). Candidate urges the Court to follow *Brown,* which is a single judge opinion and, as such, entitled to be considered persuasive, albeit not binding, authority. *Council 13, American Federation of State, County and Municipal Employees, AFL–*

---

he executes a removal notice before voting. The pre-codified version required the removal notice to be executed at the next election. The codified version does not require the removal notice to be submitted at the election following the elector's move; however, it limits elector's vote at his old polling place to one vote.

6. The "notice in paragraph 2" refers to 25 Pa.C.S. § 1901(d)(2), which warns the elector of the need to respond to the commission's notice and to confirm the elector's new address.

*CIO ex rel. Fillman v. Rendell,* — Pa. —, —, 986 A.2d 63, 72 n. 7 (2009) (citing Section 414 of the Commonwealth Court's Internal Operating Procedures).

The Court declines to follow *Brown* or, at least, Candidate's interpretation of *Brown.* First, the 2002 codification of the Voter Registration Act did not effect a substantive change to the pre-codified version of the statute in effect at the time *Flaherty* was decided. Second, the Court is bound by the holdings of our Supreme Court, and those holdings cannot be reconciled with Candidate's argument with respect to the 229 signatures.

The definitive rule was set in *In re Nader,* 580 Pa. 22, 858 A.2d 1167 (2004). Decided *after* the 2002 codification of the Voter Registration Act, *Nader* reaffirmed the principle announced in *Flaherty* that "absent extraordinary circumstances" a signature that declares a residence on the nomination petition that is different from that declared on the registration card must be stricken. *Id.* at 49, 858 A.2d at 1183. The Supreme Court rejected the argument that this rule is overly burdensome to a candidate.

Central to the holding in *Flaherty* and in *Nader* is that an elector who declares residence "at an address different than the address listed on [his] voter registration card" is not a qualified elector unless he has first completed the removal notice. *Flaherty,* 564 Pa. at 682, 770 A.2d at 333.[7]

Candidate discounts the need for a removal notice, arguing that so long as an elector has not been stricken from the registration rolls in accordance with Section 1901(d), he is a qualified elector. Candidate gives no weight to Section 1501(b)(2), which forbids an elector from voting at his former polling place until he has first executed a removal notice and delivered it to the judge of elections. 25 Pa.C.S. § 1501(b)(2). Stated otherwise, in Candidate's view, Section 1901(d) eviscerates Section 1501(b)(2) of the Voter Registration Act.

In *Welker v. Clarke,* 239 F.3d 596 (3d Cir.2001), the United States Court of Appeals for the Third Circuit considered a Section 1983 civil rights action filed by a defeated candidate for Philadelphia City Council who argued that illegal votes had been improperly counted for her opponent. The plaintiff contended that the votes cast by electors who had moved, but did not execute a removal notice, were illegal under the Pennsylvania Voter Registration Act. The Third Circuit disagreed. The Third Circuit concluded that Section 1901(d) conflicted with former Section 901 of the Voter Registration Act, now codified at Section 1501, which requires an elector to execute a removal notice at his old polling place before he votes at his former polling place.[8] The Court resolved the conflict by holding that Section 1901(d) trumped Section 901. Accordingly, the Third Circuit held that an elector may continue to vote at his former polling place

---

**7.** There are two ways to read this portion of the *Flaherty* opinion. Objector reads it to mean that the elector must execute a removal notice before signing a nomination petition. Candidate reads it to mean that to continue to be a qualified elector, the elector must execute a removal notice before voting in the next election. If the elector does so, his signature on a nomination petition must be counted. The Court takes a middle view, holding that a recent move is, itself, an extraordinary circumstance.

**8.** For the language of the pre-codified version of Section 1501, *see* n. 5, *supra.* It implicitly allowed only one vote at the former polling place because it required that the removal notice had to be completed at the first election after the move. "Section 1901(d)" was not affected by the 2002 codification of the Voter Registration Act, in section number or in language.

unless and until he is removed from the voter registration rolls in accordance with Section 1901(d). This Court disagrees with this construction of the Voter Registration Act.

Preliminarily, the Court notes that the Third Circuit's construction of a Pennsylvania statute may be cited for its persuasive value but it has no precedential effect upon a state appellate court's interpretation of a state statute. *McGill v. Southwark Realty Company*, 828 A.2d 430, 434, n. 7 (Pa.Cmwlth.2003). The Court does not find *Welker* persuasive. It is the duty of the Court to give effect to all provisions of a statute, and it is possible to give effect both to Section 1901(d) and 1501(b)(2) of the Voter Registration Act. Contrary to the *Welker* view, the Court does not believe the two provisions are in conflict. Accordingly, the Court rejects the Third Circuit's conclusion that an elector who has not been removed from the voter registration rolls can vote indefinitely at his former polling place without executing the removal notice.

There are several reasons why the Court rejects the analysis in *Welker*. First, after *Welker* was decided, the legislature plainly, and unequivocally, limited the elector to *one vote* at his former polling place. 25 Pa.C.S. § 1501(b)(2). Further, the elector cannot cast that single vote until he completes the removal notice. Second, the Third Circuit's construction could lead to confusion in that two persons with different names could claim to reside at the same address. From confusion, it is a short step to election fraud, which the procedures in Section 1901 are designed to prevent. Third, our Supreme Court, which has the final word on the meaning of the Voter Registration Act, has held twice, in *Flaherty* and in *Nader*, that absent extraordinary circumstances, an elector who

has moved and not filled out the removal notice is not a qualified elector, and, thus, cannot sign a nomination petition, let alone vote.

In sum, the Voter Registration Act establishes more than one mechanism for correcting the address of an elector who moves within the county. The correction may be initiated by the Department of State or the county election commission in accordance with the procedures in Section 1901. The correction may be initiated by the elector who completes a removal notice either before the election or when he votes at his former polling place. Nothing, however, relieves the elector of the burden of executing a removal notice in accordance with 25 Pa.C.S. § 1501(b)(2) if he attempts to vote at his former polling place.

It is Candidate's legal position that he can rehabilitate a signature where the residence declared on the nomination petition is not the residence in the registration system. This can be done merely by persuading the Court that there is a person with similar or identical handwriting who has not been removed from the voter registration rolls. Were the Court to accept Candidate's position, it would mean that the rehabilitation would consist of speculation that the elector declaring a residence not consistent with the voter registration system (1) had just moved when he signed the nomination petition; (2) intends to vote in the next election at his former polling place; and (3) will execute the removal notice at that time and place. Speculation is not evidence.

█ The Court holds that it is the candidate's burden to prove the extraordinary circumstances referred to by our Supreme Court in *Flaherty*. It is not the objector's burden to prove the absence of an extraor-

dinary circumstance.[9] This would burden the objector with proving a negative. Accordingly, the Court holds that an objector makes a *prima facie* case that a signature is invalid where the residence declared by the elector on the nomination petition cannot be confirmed by the voter registration records. The burden then shifts to the candidate to show an extraordinary circumstance, such as the fact that the elector has recently moved and intends to execute the removal notice at the old polling place at the next election. There may be other extraordinary circumstances. The elector may be living temporarily at the residence shown on the nomination petition because the residence listed at the address shown in the registration system has just burned down.[10]

At the hearing, Candidate attempted to rehabilitate eight of the 229 signatures at issue here by presenting affidavits from the signing electors.[11] Candidate also attempted to rehabilitate three more signatures by presenting testimony from himself and from a circulator, Jesse Vodvarka, for signatures at page 3, line 14; page 24, line 5; and page 68, line 3, electors with whom the witnesses were personally acquainted. Candidate's evidence sought to show that the electors were all residents of the county who had not yet executed a removal notice but will do so before the primary election date. Objector objected to the evidence as irrelevant and not demonstrating an extraordinary circumstance. In any case, the testimony was redundant as to two signatures, *i.e.*, those on page 3, line 14 and on page 68, line 3, which were addressed in the affidavits; accordingly, the total number of proffered rehabilitations was nine.

■ Of the nine, four affiants attested that they had recently moved to the residence shown on the nomination petition. The Court will consider a recent move to be an extraordinary circumstance; each affiant stated that he or she would execute the removal notice before the May 18, 2010, primary election date. Unlike the pre-codified version of the Voter Registration Act, it is no longer required that the elector execute the removal notice at the first election that follows a move within the county.[12] However, a failure to complete a removal notice well over a year after a move cannot, in itself, be considered an extraordinary circumstance. Four affiants stated that they would execute the removal notice, but they offered no reason for not having done so in the years since their move, which was 15 years in one case.[13]

9. Candidate proposes to rehabilitate the signatures of electors who declare residence at an address different from that in the voter registration system by proving, as fact, that an elector of the same name, and with the same or similar handwriting, is registered in the same county at another address. The burden then shifts to the objector, according to Candidate, to prove that the elector's signature should be stricken because there are no extraordinary circumstances.

10. It is not clear what Objector would consider an extraordinary circumstance. He did not agree that a recent move and plan to execute a removal notice at the former polling place constitutes an extraordinary circumstance. To sign a nomination petition, the elector who has moved must file a removal notice, under Objector's view, before signing a nomination petition.

11. Candidate undertook this kind of rehabilitation notwithstanding his legal position that it was not necessary. Candidate believes that to rehabilitate all 229 signatures he needs to show only that an elector, of the same name and with similar handwriting, is registered at another address in the county.

12. *See* n. 5, *supra*, for a comparison of the relevant pre-codified and codified provisions of the Voter Registration Act.

13. Electors who moved within approximately the last year are those at page 3, line 14; page 9, line 37; page 18, line 15; and page 68, line

The Court will accept four of Candidate's proffered rehabilitations of signatures from electors who moved within the past year. This finding reduces the 229 signatures at issue to 225. However, only 125 signatures must be stricken for Objector to prevail.

The Court strikes 225 signatures from Candidate's nomination petition. This leaves Candidate with 1,899 valid signatures, which is fewer than the 2,000 signatures required under Section 912.1(2) of the Election Code, 25 P.S. § 2872.1(2). Accordingly, Objector's petition to set aside Candidate's nomination petition must be granted.

### ORDER

AND NOW, this 13th day of April, 2010, it being found that the Nomination Petition of Joseph Vodvarka as a candidate of the Democratic Party for the United States Senate in the Primary Election of May 18, 2010, contains fewer than 2,000 valid signatures, it is hereby ORDERED that the Petition to Set Aside the Nomination Petition filed by Joseph A. Sestak, Jr. is GRANTED.

It is further ORDERED that each party shall bear his own costs.

The Chief Clerk is hereby ORDERED to notify the parties hereto and their counsel of this order and also to certify a copy hereof to the Secretary of the Commonwealth of Pennsylvania.

---

3. The electors at page 38, line 6; page 54, line 2; page 55, line 2; and page 60, line 10 all moved far more than a year ago; one elector actually moved 15 years ago.