OPINION BY
Judge P. KEVIN BROBSON.
Before this Court is a petition filed by Joseph A. Sestak, Jr. (Objector or Sestak), to set aside the nomination petition of Joseph Vodvarka (Candidate or Vodvarka) as a Democratic Party candidate for the United States Senate. Candidate seeks to appear on the ballot in the primary election scheduled for April 26, 2016. Objector contends that Candidate’s nomination petition lacks the minimum number of valid signatures required by law to appear on the primary election ballot. The parties have filed a Stipulation of Facts (Stipulation) and a memorandum of law or brief in support of their respective positions. Upon consideration of the same, and for the reasons set forth below, we grant Objector’s petition to set aside Candidate’s nomination petition.
To appear on the primary election ballot as a candidate for the office of United States Senator,' Section 912.1(2) of the Pennsylvania Election Code (Election Code)[1] requires 2,000 valid signatures of registered electors who are members of *248 the party whose nomination is sought. Candidate filed with the Department of State a nomination petition, consisting of 137 pages and purporting to contain 2,744 signatures. Objector, in his petition to set aside, challenged numerous individual signatures on Candidate’s nominating petition as invalid for a variety of reasons. Pursuant to this Court’s scheduling' and case management order, the parties reviewed each and every challenged signature line and entered into the Stimulation. ■
The parties' stipulated that, after striking certain signatures by agreement, 2,186 signatures remain on the nomination petition.[2] The parties also stipulated, as follows:
4. Of the remaining 2,186 entries on the Vodvarka Nomination Petition, 461 entries contain a name and signature matching that of a [ ] person registered to vote in the county reflected on the Petition page containing the entry, but the address provided in the entry does not match the address on record in the SURE [3] system for the individual of that name.... [Tjhese 461, entries ... are generally referred to by the. parties as the ‘NRA entries’ (“NRA” meaning Not Registered at the Address set forth on the Petition).....
5. The treatment of the 461 NRA entries presents a common and singular question of law for the Court, and the Court’s determination of that question of law shall be determinative of the viability of every entry in the group. If the Court accepts Objector Sestak’s contention that the NRÁ entries are defective, then the Vodvarka Nomination Petition will not contain a sufficient number of valid signatures to enable Vodvarka to qualify for the ballot. In that event, the Vodvarka Nomination Petition shall be stricken and Vodvarka shall not appear on the ballot as a candidate for the nomination of the Democratic Party for U.S. Senate in the upcoming Primary Election on April 26,2016,
6.Of the remaining 2,186. entries on the Vodvarka Nomination Petition, 220 entries contain a name, signature, and street address matching that of an individual registered to vote in the county reflected on the Petition page containing the entry, but the place set forth in the ‘City, Boro or Twp.’ section of the entry does not mátch the political subdivision on record in the SURE system for the individual of that name and street address — [Tjhese 220 entries ... are generally referred to by the parties as the ‘MUN entries’ (‘MUN’ meaning the entry sets forth the wrong MUNicipality)....
7:' The treatment of the 220 MUN entries presents a common and singular question of law for the Court, and the Court’s determination of that question of law shall be determinative of the viability of every entry in the group. If the Court accepts Objector Sestak’s contention that the MUN entries are defective, then the Vodvarka Nomination Petition will not contain a sufficient number of valid signatures to enable Vodvarka to qualify for the ballot. In that event, the *249 Vodvarka Nomination Petition-must be stricken and Vodvarka shall not appear on the ballot as a ■ candidate for the nomination of the Democratic Party for U.S. Senate in the upcoming Primary Election on April 26, 2016.
(Stip. ¶¶ 4-7.)[4] In order to dispose of the above-described objections, the parties further stipulated to waive their right to an evidentiary hearing, agreeing instead to have the legal issues submitted to the Court on briefs and without oral argument for disposition on the stipulated facts. (Stip. ¶ 10.)
The two legal issues for consideration by this" Court are as follows: (1) whether the NRA signatures must be stricken because the signer’s address does not match the address listed in the voter registration records, even though the parties agree that the signature on the nomination petition matches the signature on the voter registration record;[5] and (2) whether an elector’s signature may be stricken from a nomination petition when the elector uses the address set forth in his. voter registration record instead of .setting forth his street address and municipality.
At the outset, we begin our analysis by noting that the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §§ 2600-3591 (Election. Code), is to “be liberally construed so as not to deprive an individual of his right to run for office or the voters of their right to elect the candidate of their choice.” In re Nomination Petition of Wesley, 536 Pa. 609, 640 A.2d 1247, 1249 (1994). A party alleging defects in a nomination petition has the burden of proving such defects. In re Johnson, 509 Pa. 347, 502 A.2d 142, 146 (1985). The placement of this burden on an objector recognizes that there is a presumption that the signatures on a petition are valid. In re Creighton, 899 A.2d 1166, 1168 (Pa.Cmwlth.) (Leavitt, J.), aff'd per curiam, 586 Pa. 652, 896 A.2d 583 (2006).
Section 907 of the Election Code, 25 P.S. § 2867, provides, in part, that persons who sign a nomination petition must be “duly registered and enrolled members of’ the same party as the candidate and be “qualified'electors of the State, or of the political district, as the case may be, within 'which the nomination is to be made or election is to be held.” Section 908 of the Election Code, 25 P.S. § 2868, provides, in part, that a person signing a' nomination petition
shall add his residence, giving city, borough or township, with street and' number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers: Provided, however, That if the said political district named in the petition lies wholly within any city, borough or township, or is coextensive with same, it shall not be *250 necessary for any signer of a nomination petition to state therein the city, borough or township of his residence.
With regai-d to the first legal issue, the parties’ positions may be summarized as follows. Objector contends that absent extraordinary circumstances, which Candidate must prove, the NRA entries must be stricken as invalid. Objector relies on the Pennsylvania Supreme Court’s decisions in In re Nomination Petition of Flaherty, 564 Pa. 671, 770 A.2d 327 (2001), and In re Nomination Papers of Nader, 580 Pa. 22, 858 A.2d 1167 (2004), and this Court’s reported single-judge opinion In re Nomination Petition of Vodvarka, 994 A.2d 25 (Pa.Cmwlth.2010) (Leavitt, J.).[6],[7] Candidate contends that if the elector’s signature on the nomination petition matches a signature on the voter registration record, then that signature can be counted as valid, provided that the elector is otherwise qualified, notwithstanding the discrepancy in address. Candidate maintains that nothing in the Election Code requires a signer to record on a nomination petition the address at which he resided at the time that he executed his voter registration application. It only requires' that he write his current residence. Moreover, because he is seeking to be placed on the ballot for a federal office, Candidate argues that the National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg-1 to 1973gg-10, transferred to 52 U.S.C. §§ 20501-20511 (NVRA), controls and limits the circumstances under which a State may remove a registered voter from registration rolls. Candidate cites the United States Court of Appeals for the Third Circuit decision in Welker v. Clarke, 239 F.3d 596 (3d Cir.2001), which upheld an injunction against Pennsylvania election officials for enforcing provisions of the Election Code that conflicted with the NVRA for federal elections. According to Candidate, any continued reliance on Flaherty with regard to the issue now before the Court is misplaced.
Our analysis begins with Flaherty, In Flaherty, the Supreme Court considered the question of whether -signatures on a nomination petition must be struck where the address provided by the signatory did not match that of any person by that name in the voter registration records of the signatory’s county of residence and determined such entries to be invalid. The Supreme Court held that “absent extraordinary" circumstances, electors who declare a residence at an address différent than the address listed on them voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the [Pennsylvania] Voter Registration Act- [ (PVRA) ].[8]” Flaherty, 770 A.2d at 333. The Supreme Court in Flah-erty reached this conclusion after examining provisions of the Election Code, which the legislature repealed the following year, relating to removal of electors from the voter registration record of a county, observing:
*251 A person is required to indicate, under penalty of perjury, his or her place of residence in order to register as an elector. 25 P.S. § 961.501. Furthermore, when electors move either within the same county or to another county within the Commonwealth, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. 25 P.S. §§ 961.901-961.902. Indeed, the registration commission must verify the residences of registered electors to insure that the qualified elector actually resides at the address listed on his voter registration card. 25 P.S. §§ 961.906-961.907[J
Flaherty, 770 A.2d at 333.
The Supreme Court in Flaherty also noted that both the Supreme Court and the Commonwealth Court had issued decisions in which they concluded that electors must notify authorities of a change in address in order to remain qualified electors. See In re Nomination Petition of Wesley, 536 Pa. 609, 640 A.2d 1247, 1250 (1994); In re City of Pittsburgh Home Rule Charter, 694 A.2d 1128, 1132 (Pa.Cmwlth.1997). Citing those cases and Section 908 of the Election Code, the Supreme Court reasoned that “[w]here electors fail to properly notify authorities of a change in address, those electors’ voter registrations are terminated and thus, they are clearly disqualified from signing a nomination petition as a registered and enrolled elector.” Flaherty, 770 A.2d at 334. Flaherty, thus, rejected the reasoning set forth in this Court’s earlier conflicting decision in In re Nomination Petition of Cooper, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994), wherein we held that even if an elector’s address is not identical to that found on the electors registration card, the elector’s signature should not be struck absent an allegation that the elector does not actually live at the address indicated on the petition.
The Pennsylvania Supreme Court in Nader implicitly reaffirmed its ‘holding in Flaherty when it expressly rejected the candidate’s argument that the impact of such a ruling on a candidate-for collecting signatures for nomination papers for a national election was onerous or unduly burdened ballot access in violation of the federal Voting Rights Act, 52 U.S.C. §§ 10101-10702, formerly set forth at 42 U.S.C. § 1971 (Voting Rights Act).[9] In so doing, our Supreme Court in Nader observed that Flaherty did “not concern the right of an individual to vote. , Rather[, it] explain[s] the steps that a candidate must take in order to be properly placed on a ballot.” Nader, 858 A.2d at 1183. For that reason, the Supreme Court rejected the argument in Nader that application of Flaherty violated the Voting Rights Act.
In Vodvarka,[10] the Court, speaking through then-Judge Leavitt,[11] noted that, “[i]n the past, a signature was not neces *252 sarily stricken from a nomination petition where the elector declared a residence on the nomination petition at an address different from that found in the voter registration records.” Vodvarka, 994 A.2d at 28. Rather, “[t]he discrepancy could lead to a signature strike ... if the objector could show that the elector did not live at the residence declared on the petition or that the declared residence was not located in the district.” Id. The law changed, however, with our Supreme Court’s ruling in Flaherty that “absent extraordinary circumstances, electors who declare a residence at an address- different than, the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the [PVRA].” Id. at 28 (quoting Flaherty, 770 A.2d at 333 (emphasis added)). The -Court summarized the holding in Flaherty as requiring that “a signature from an elector whose declared residence on the nomination petition differs from that on the voter registration records must be stricken, unless the elector has complét-ed a removal ñotice.” Id.
The Court then examined the statutory provisions regarding the removal notice referenced. in Flaherty, observing that Section 1501(b)(2) of the PVRA,[12] 25 Pa.C.S. § 1501(b)(2),
permits an elector who has moved to a new residence in the same county, but not yet filed a removal notice, to vote once at the elector’s former polling place., To vote, the elector-must file the removal notice with the judge of election when he appears to vote at his former polling place.
Vodvarka, 994 A.2d at 28-29. The Court also noted that the PVRA “also provides procedures for striking names from the voter registration records to ‘protect the integrity of the eléctoral process and to ensure the maintenance of accurate and current registration records’ ” and requires the Secretary of State to “establish a program to identify electors who have moved and notify those electors that their addresses will be changed on the registration records.” Id. at 29 (quoting 25 Pa.C.S. § 1901(a), (b)). County registration commissions are required to identify electors who do not reside “at the registered address,” but the commissions will not remove an elector “from the voter registration rolls until the county commission follows the procedures in Section 1901(d) [of the PVRA] for culling the voter registration records.” Id. '
The candidate in Vodvarka argued that “until an elector’s name is removed from the county voter registration records in accordance with the procedures set forth in Section 1901 [of the PVRA, 25 Pa.C.S. *253 § 1901], that elector remains a qualified elector and authorized to sign a nomination petition, so long .as he continues to reside in the same county.” . Id. The Court, noting that “the 2002 codification of the PVRA did not effect a substantive change to the pre-codified version of the statute in effect at the time Flaherty was decided” and that this “Court is bound by the holdings of our Supreme Court, and those holdings cannot be reconciled with [the Candidate’s argument,” concluded that a definitive rule was established in Nader. Id. at 30. The Court wrote:
Decided after the 2002 codification of the Voter Registration Act, Nader reaffirmed the principle announced in Flah-erty that “absent extraordinary circumstances” a' signature that declares a residence on the nomination petition that is different from that declared on the registration card must be stricken. The Supreme Court rejected the argument that this rule is overly "burdensome to a candidate.
Central to the holding in Flaherty and in Nader is that an elector who declares residence “at an address different than the address listed on [his] voter registration card” is not a qualified elector unless he has first completed the removal notice. Flaherty, 770 A.2d at 383. [The c]andidate discounts the need for a removal notice, arguing , that so long as an elector has not been stricken from the registration rolls in accordance with Section 1901(d) [of the Voter Registration Act], he is a qualified elector. [The candidate gives no weight to Section 1501(b)(2), which forbids an elector from voting at his former polling place until he has first executed a removal notice and delivered it to the judge of elections. 25 Pa.C.S. § 1501(b)(2) [of the Voter Registration Act]. Stated otherwise, in [the Candidate’s view, Section 1901(d) eviscerates Section 1501(b)(2) of the Voter Registration Act. ;
Id. (footnote omitted).
The Court noted and rejected the Third Circuit’s decision in Welker, which concluded that Section 1901(d) of the PVRA and former Section 901 of the PVRA (now Section 1501(b)(2) of the PVRA) conflicted with each other, and held that Section 1901(d) trumped Section 1501(b)(2). Under Welker, “an elector who has not been removed from the voter registration rolls can vote indefinitely at his former polling place without executing the removal notice.” Vodvarka, 994 A.2d at 31. The Court advanced several reasons for rejecting Welker:
There are several reasons why the Court rejects the analysis in Welker. First, after Welker was decided, the legislature plainly, and (unequivocally, limited the elector to one vote at his former polling place. 25 Pa.C.S. § 1501(b)(2). Further, the elector cannot cast that single vote until he.completes the removal notice. Second, the Third Circuit’s construction could lead to confusion in that two persons with different names could claim to reside at the same address. From confusion, it is a short step to election fraud, which the procedures in Section 1901 [of the PVRA] are designed to prevent. Third, our Supreme Court, which has- the final word on the meaning of the [PVRA], has held twice, in Flaherty and in Nader, that absent extraordinary circumstances, an elector who has moved and not filled out the removal notice is not a qualified elector, and, thus, cannot sign a nomination petition, let alone vote.
In sum, the [PVRA] establishes more than one mechanism for correcting the address , of an elector who moves within the county. The correction may be initiated by the Department of State or the *254 county election commission in accordance with the procedures in Section 1901. The correction may be initiated by the elector who completes a removal notice either before the election or when he votes at his former polling place. Nothing, however, relieves the elector of the burden of executing a removal notice in accordance with 25 Pa.C.S. § 1501(b)(2) if he attempts to vote at his former polling place.
Id. at 31.
The Court rejected the candidate’s contention that where the residence declared on .the nomination petition does not match the address in the voter registration record a candidate may rehabilitate a signature by merely “persuading the Court .that there is a person with similar or identical handwriting who has not been removed from the voter registration rolls[,]” because it would require speculation, rather than evidence, that the elector “(1) had just moved when he signed the nomination petition; (2) intends to vote in the next election at his former polling place; and (3) will execute the removal notice at that time and place.” Id. Rather, the Court' in Vodvarka concluded that where the objector makes a prima facia case that a signature is invalid by establishing that the residence declared on the nomination petition does not match the address in the voter registration record, “it is the candidate’s burden to prove the extraordinary circumstances referred to by our Supreme Court in Flaherty.” Id. Extraordinary circumstances could include “the fact that the elector has recently moved and intends to execute the rémoval notice at the old polling place at the next election” or that “[t]he elector may be living temporarily at the residence shown on ■ the nomination petition because the résideneé listed at the address shown in the registration system has just burned down.” Id. at 32. Other circumstances could also be considered extraordinary, “[hjowever, a failure to complete a removal notice well over a year after a move cannot, in itself, be considered an extraordinary circumstance.” Id.
Two years later, this Court in In re Robertson (Pa.Cmwlth., No. 507 M.D. 2012, filed September. 20, 2012)[13] (an unreported memorandum opinion by a three-judge panel), rev’d in part on other grounds, 618 Pa. 150, 55 A.3d 1044 (2012) (per curiam), considered the issue of “whether a signature- of a registered voter whose name appears as an eligible voter in the SURE system’s registration records is invalid solely because the address at which the voter is registered is different from the address within the same county that the voter wrote the [njomination [pjapers.”[14] Robertson, slip op. at 13. The Court concluded “that because such voters are, under the laws applicable to these [njomination [pjapers, registered voters eligible to vote in the November 2012 election, the mere fact that the address does not match does not invalidate the signature.” Id.
The Court in Robertson observed that the Supreme Court in Flaherty “made *255 clear that the sole basis for the invalidity of the signatures was that the address discrepancy, absent a showing of extraordinary circumstances, prevented the signer from being a registered voter eligible to vote in the election at issue.” Id. at 15. The Court in Robertson, relying heavily on the Third Circuit’s decision in Welker (which the Court found unpersuasive in Vodvarka), differentiated the circumstances in the matter before it in, Robertson from those in Flaherty, as follows:
The voter registration laws applicable to this election are substantially different from the voter registration law provisions on which Flaherty was based. Unlike the state election at issue in Flaherty, elections for federal office are subject to the requirements of the National Voter Registration Act ... (NVRA), 42 U.S.C. § 1973gg-6 [(now located at 52 U.S.C. § 20507) ]. The NVRA expressly prohibits states from disqualifying voters merely because they moved within the county without updating their address with the board of elections, and requires that such voters be permitted to vote at their prior polling place without changing their registration address in advance of the election. 42 U.S.C. § 1973gg-6(e);[15] Welker v. Clarke, 239 F.3d 596, 598-99 (3d Cir.2001). The NVRA also expressly prohibits states from terminating voters’ registrations and removing voters from the rolls for federal elections simply because the voter has moved within the county without changing his or her address. 42 U.S.C. § 1973gg-6(d), (f);[16] Welker, 239 F.3d at 598-99. Voters can be removed from the rolls based on a change of address within the same county only if the voter is first given notice and both fails to respond to the notice and fails to vote in at least two federal general elections. 42 U.S.C. § 1973gg-6(d).
Id. at 15-16 (emphasis added) (footnotes in original but renumbered here). The Court then quoted the following passage from Welker:
One of the NVRA’s central purposes was ... to ensure that, once registered, voters could not be removed from the registration rolls ... because they had changed addresses. To achieve this *256 purpose, the NVRA strictly limited removal of voters based on change of address .... The NVRA went even further by also requiring the implementation of ‘fail-safe’ voting procedures to ensure voters would not be. removed from registration rolls due to ... the voter’s own failure to re-register at-a new address.
Robertson, slip op. at 17 (quoting Welker, 239 F.3d at 598-99 (citations omitted)). Based upon this reasoning, the Court in Robertson concluded that “[a] registered voter who has moved within the same county without changing his address is therefore legally eligible to vote in federal elections under the NVRA.” Id. (emphasis added).
The Court in Robertson noted that federal election law preempts state election laws, see Kuznik v. Westmoreland County Board of Commissioners, 588 Pa. 95, 902 A.2d 476, 495-504 (2006), and that federal courts had declared the restriction
in Flaherty that ‘[generally, voters who move within a county are not allowed to vote on the day of election unless they have re-registered or filed' a-’removal notice with the registrar regarding the change thirty days before the election,’ was ... in violation of the NVRA and invalid for federal elections.
Robertson, slip op. at- 17-18 (quoting ACORN v. Ridge, Nos. 94-CV-7671, 95-CV-382 (E.D.Pa. Mar. 30, 1995), slip op. at 5, 9, 1995 WL 136913; citing Welker, 239 F.3d at 599). The Court then stated “[w]here, as here, a federal court has entered a judgment that a specific provision of our election laws is illegal under federal law, our Court, as a matter of comity, must follow that federal ruling." Id. at 18 (citing In re Stevenson, 615 Pa. 50, 40 A,3d 1212, 1222-26 (2012)). The Court then held:
Because signers of the [n]omination [pjapers who are registered to vote at a different address from their current residence within the same county .are therefore registered, enrolled voters legally entitled to vote in the .November federal elections; ■ they are ‘qualified electors’ with respect to the federal [c]andidates and the non-matching address does not invalidate their signatures.

Id.

The Court then extended the holding to ¿lections for state candidates when it opined:
While the NVRA applies only to federal elections,. the result is the same with respect to state candidates. In 2002, after Flaherty was decided, the General Assembly repealed the statute on which Flaherty was based and enacted a new Voter Registration Act (the 2002 Act [or ' PVRA]), 25 Pa.C.S. §§ 1101-3302. Under the 2002 Act, a voter who has moved within the same county is entitled to vote in one election at his old polling place, regardless of when he moved. 25 Pa.C.S. § 1501(b)(2). In addition, the 2002 Act provides that a voter’s registration cannot be canceled simply because the voter moved without changing his registration address, and a voter cannot be removed from the rolls based on a move within the same county unless the specific requirements of the NVRA are met (failure to respond [to] notice and failure to vote in two federal elections). 25 Pa.C.S. § 1901(a), (d). ' Thus, Pennsylvania’s current voter registration laws are substantially different from the automatic termination of registration and termination of eligibility on which Flaherty was based. , The. current laws, like the NVRA, treat changes of address within the 'same county as not impairing the voter’s eligibility. Moreover, to the extent that there are differences between' the 2002 Act and the NVRA,' our Su *257 preme Court made clear in 2006 that Pennsylvania’s Election Code provides a unitary election system for federal and state offices and that procedures for voting in state elections are to conform to federal requirements in order to prevent separate federal and state voting systems. Kuznik, 902 A.2d at 490-92.
Accordingly, under the present Pennsylvania voter registration laws, enacted after Flaherty, and under our Supreme Coúrt’s more recent admonition to interpret state voting systems to conform to federal law, differences in address within the same county ‘do not prevent the signers from voting at their former polling places’ and ‘have no legal effect on the signers’ status as a qualified and registered elector’ in state elections. In re Nomination Petition of Brown, 846 A.2d 783, 787 (Pa.Cmwlth.2004). Because such address differences do not alter the signers’ status as ‘qualified electors,’ these non-matching addresses do not invalidate their signatures.... In re Nomination Petition of Payton, 945 A.2d 279, 286 n. 3 (Pa.Cmwlth.), aff'd per curiam, ... [596 Pa. 469] 945 A.2d 162 (2008) (abrogated in part on other issue by Stevenson); Broion, 846 A.2d at 787.
Id. at 18-20 (emphasis added) (footnote omitted).
Responding to the objector’s contention that Flaherty and Nader required a different outcome, the Court in Robertson opined that neither Flaherty nor' Nader disposed of the specific issue before the Court in Robertson. .Although the NVRA was in effect when Flaherty was decided, Flaherty did not involve a federal election and the opinion did not consider the NVRA. Moreover, although the Supreme Court in Nader and the Commonwealth Court in In re Nomination Paper of Rogers, 914 A.2d 457 (Pa.Cmwlth.), aff'd per curiam, 589 Pa. 86, 907 A.2d 503 (2006), applied Flaherty to invalidate signatures on nomination papers for federal elections after the 2002 change in Pennsylvania’s voter registration statutes, those decisions did not consider “the fact that voters who moved within the county without changing their address were eligible to vote under the NVRA and the 2002 Act and whether the basis on which Flaherty struck those signatures was permissible under federal law.” Id. at 21-22. The Court further explained:
The only federal voter registration law before the Supreme Court in Nader was a different statute, 42 U.S.C. § 1971(a)(2)(B), which does not involve the effect of a move within the county on a voter’s registration. [Nader,] 858 A.2d at 1183. Nowhere in its opinion in Nader did the Court discuss the section of the NVRA at issue here, 42 U.S.C. § 1973gg-6, the 2002 Act or the effect of those laws on Flaherty. [Id.] at 1183— 84. Indeed, ‘the argument before the Court in Nader was not whether Flaherty’s non-matching address rule was valid given the effect of the NVRA and the 2002 Act, but whether ‘the impact’ of Flaherty and other decisions ‘on collecting signatures for [n]omination [pjapers for a national election is onerous,’ given the-large number of signatures required by Section 951 of the Election Code. [Id.] at 1183. Moreover, Nader is not the last word from our Supreme Court on the effect of federal law on the interpretation and enforcement of Pennsylvania’s election laws. Subsequent to Nader, our Supreme Court held in Kuznik that federal election law must be. followed, even where it conflicts with express state constitutional provisions. [Kuznik,] 902 A.2d at 495-504. In addition, just this year, our Supreme Court held in Stevenson that where a federal court has struck down a provision of our Election Code, that decision is to be *258 followed, rather than our prior rulings. Stevenson, 40 A.3d at 1222-26.
Neither of this Court’s single-judge decisions in Rogers considered the NVRA at all or the fact that under the 2002 Act, a move without changing registration address does not disqualify a registered voter from voting or terminate his registration. Rather, these decisions simply assumed that the voter Registration laws were the same as the law on which Flaherty was based and that Flaherty was still good law applicable to that election. Rogers, 914 A.2d at 465-66 & n. 13; [In re Nomination Papers of Rogers, 908 A.2d 942, 945 (Pa.Cmwlth.2006) (abrogated in part by Stevenson ) ].
Id. at 22-23.
The Court in Robertson then rejected the Court’s prior reasoning in Vodvarka as not persuasive. First, the Court reasoned that Vodvarka improperly switched the burden to the candidate to prove validity when a signer moves, rather than the burden staying with the objector to show that a signature is invalid. Second, the Court disagreed:
that finding a signer with a non-matching address to be an eligible voter would require ‘speculation that the elector ... (1) had just moved when he signed the nomination petition; (2) intends to vote in the next election at his former polling place; and (3) will execute the removal notice at that time and place,’
because those requirements are not relevant under Robertson’s analysis of the NVRA and the 2002 Voter Registration Act. Id. at 24 (citing Vodvarka, 994 A.2d at 31). Furthermore, invalidating a signature based on the possibility that a voter could be removed from the rolls in the future “is inconsistent with the Supreme Court’s holding in [In re ] Johnson, [509 Pa. 347, 502 A.2d 142 (1985),] that it is the signer’s status on the voter registration rolls when a nomination-petition is signed and filed that determines the validity of the signature.” Id. at 24.
The Court in Robertson, addressing the concept of comity, wrote:
Furthermore, the Vodvarka [Cjourt based its conclusion on the rejection of the federal court[’s] Welker decision, which interpreted Pennsylvania’s vqter registration law to conform to ..the requirements of the NVRA. Vodvarka, 994 A.2d at 30-31. While the [C]ourt correctly noted that federal court decisions are ordinarily not binding precedent, we believe that our Supreme Court’s decisions in Kuznik and Stevenson mandate that this Court follow Welker and the federal district court ruling in ACORN v. Ridge declaring illegal the termination of voter registration for failure to file a change of address.
Id. The Court in Robertson also disagreed with the conclusion in Vodvarka that striking the signatures of electors with non-matching addresses prevents or reduces election fraud. Id. at 24-29.
Objector, characterizing Robertson as against the considerable authority of this Court, counters by asking the Court to adopt the reasoning set forth in Judge Covey’s dissent in Robertson. .Judge Covey’s dissent disagreed with the majority’s conclusion that federal election law preempts state election law with regard to the issue now before this Court.
Judge Covey’s dissent in Robertson persuasively rejected the majority’s proposition that the federal preemption analysis applied by our Supreme Court in Kuznik mandated that we conclude that the'requirements of the NVRA preempted the requirements of the PVRA with regard to the requirements for valid signatures on a nomination petition. The Robertson dis *259 sent noted that Kuznik involved the Help America Vote Act (HAVA), 52 U.S.C. §§ 20901-21145;[17] Article VII, Section 6 the Pennsylvania Constitution, relating to the use of voting machines; and Section 1104-A of the Election Code,[18] relating to the installation of electronic voting systems. Our Supreme Court in Kuznik concluded that HAVA preempted the state laws, because it found that the state laws were an obstacle to the HAVA goals. Of significance to the Robertson dissent was the fact that both statutes in Kuznik — the HAVA and the PVRA — “involve the fundamental right to vote.” Robertson (dissent), slip op. at 3 (citing Kuznik, 902 A.2d at 488.) The Robertson dissent noted that Robeitson, however, did not concern the right to vote. Rather, the matter involved solely the right to sign nomination papers, and “[r]equiring a signer of a [n]omination [p]aper to validate that he or she is in fact a qualified elector when the address he or she affixes to a [njomination [pjaper does not match his or her address in the SURE system, in no way effects that individual’s right to vote.” Id. (emphasis added). The Robertson dissent observed that
concepts of federalism and state sovereignty make clear that in discerning whether Congress intended to preempt state law, there is a presumption against preemption. Specifically, the United States Supreme Court has stated that “it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so.” Stated another way, a cornerstone of the United States Supreme Court’s preemption jurisdiction is that, “[i]n all pre-emption cases, and particularly in those in which Congress has ‘legislated ... in a field which the States have traditionally occupied,’ ... we ‘start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.’ ”
Id. at 4-5 (alterations in original) (citations omitted) (quoting Dooner v. DiDonato, 601 Pa. 209, 971 A.2d 1187, 1193 (2009)).
The Robertson dissent, citing Orson, Inc. v. Miramax Film Corporation, 189 F.3d 377, 381 (3d Cir.1999), and Dooner, then examined the three ways in which federal law may preempt state law, which have been described as express preemption, field or implied preemption, and conflict preemption. The dissent opined that
the NVRA makes absolutely no reference to [njomination [pjapers or a mechanism of placing an individual’s name on an election ballot. Because there is no explicit statutory language in the NVRA indicating that state law is to 'be displaced, and the NVRA does not expressly preempt the definition of a ‘qualified elector’ for the purpose of being eligible to sign a [njomination [pjaper, the state’s definition of ‘qualified elector’ cannot be displaced on the basis of express preemption.
[Moreover, tjhe NVRA specifically provides: ‘notwithstanding any other Federal or State law, in addition to any other method of voter registration provided for under state law, each State shall establish procedures to register to vote in elections for Federal office....’ 42 U.S.C. § 1973gg-2(a) (emphasis added). Thus, the NVRA was not intended to preempt the PVRA provisions relat *260 ing to a registered elector or the Election Code regarding a qualified elector for federal elections. In addition, the NVRA makes absolutely no reference to domination [p]apers or a mechanism of placing an individual’s name on an election ballot. Because the NVRA did not so thoroughly occupy the field as to leave no room for the states regarding the definition of a ‘qualified elector’ for the purpose of being eligible to sign a domination [pjaper, there is no field preemption.
In the instant case, there is no conflict between the federal law and the state law.
Id. at 5-6 (seventh alteration in original).
Focusing on the Election Code’s provisions regarding qualified electors,[19] the Robertson dissent concluded that no conflict existed between the NVRA and PVRA. The Robertson dissent also opined that the majority in Robertson improperly focused on removal from the voting roll, when the real issue is whether a registrant is permitted to vote. Both the NVRA and the PVRA .permit a. registrant who has moved and . not officially changed his address in the voter registration record to vote upon an affirmation of his new address. See 52 U.S.C. § 20507(e); Section 1501(b) of the PVRA, 25 Pa.C.S. § 1501(b). Thus, no conflict existed between the two statutes.
The Robertson dissent summarized the essence of its position, as follows:
It is important to be clear that this case does not in any manner concern the removal of a registrant from the voter rolls. The issue is who has the right to sign a [njomination [pjaper, which is defined as one who- has the right to vote. Both federal and state laws mandate that the right to vote has corresponding duties which includes among them the proactive step of ensuring the accuracy of one’s residence. Where a registrant has a change of address and he or she has not affirmed or confirmed his or her new residence at the time of election, he or she has chosen not to use his or her right to vote, thus, eliminating his or her status as a qualified elector. An individual who is not qualified to vote in a current election is not qualified to sign a [njomination [pjaper in that same election.
Robertson (dissent), slip op. at 10-11.
We now resolve the conflict between the Court’s reported single-judge opinion in Vodvarka and our unreported panel decision in Robertson in favor of the analysis set forth in Vodvarka for two reasons.
First, the Robertson dissent sets forth a well-reasoned analysis establishing that Robertson’s reliance on Kuznik, in particular, and the concept preemption, in general, to preempt the Supreme Court’s holding in Flaherty is misplaced.[20] Thus, we conclude that the Supreme Court’s analysis in Flaherty is not preempted by federal law.
Second, while the majority decision in Robertson is thoughtful, it digresses from the clear and explicit holdings of our Supreme Court in Flaherty, which the Supreme Court reaffirmed in Nader and continues to reaffirm, that “absent extraordinary circumstances, electors who declare a residence at an address different than the *261 address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed, the removal notice required by the [PVRA].” Flaherty, 770 A.2d at 333. We are mindful that our Supreme Court has steadfastly continued to apply .the holding in Flaherty over the many years. As recently.as 2012, the Supreme Court again cited Flaherty in In re Nomination Petition of Gales, 618 Pa. 93, 54 A.3d 855 (2012), and in In re Lunny, 615 Pa. 460, 44 A.3d 1 (2012) (per - curiam), rev’g In re Nomination Petition of Lunny (Pa.Cmwlth., No. 170 M.D.. 2012, filed April 5, 2012).[21] Moreover, our Court acknowledged the Supreme Court’s holding in Lunny in In re Nomination Petition of Sweeney (Pa.Cmwlth., No. 423 M.D. 2014, filed September 4, 2014) (Leadbetter, J.),[22] and on numerous instances since then our Court, has followed the reasoning of Sweeney and applied the analysis set forth in Vodvarka.[23]
In light of the Supreme Court’s continued adherence to Flaherty and Nader and in the absence of clear federal preemption, it is for our Supreme Court to overrule that line of cases. Until the Supreme Court does so, we will continue to apply those cases as the Court did in Vodvarka and the many cases applying Vodvarka. As such, we reiterate the presumption that a signature on a nomination petition is valid, and an objector has the burden of proving defects in a nomination petition. An objector may prove a defect by showing that an individual’s address on the petition does not match the address in the voter registration records. At that point, the burden shifts to the candidate to produce evidence to show why the signa *262 ture should not be stricken — ie., that extraordinary circumstances existed. Vod-varka, 994 A.2d at 31-32. Because the candidate is in a better position to make this showing given that the candidate (or his supporters) obtained the signatures, it is reasonable for the candidate to bear this burden. Accordingly, the Court strikes the 461 signatures that are the subject of Objector’s NRA challenges.
Next, we consider whether an elector’s sigriature may be stricken from a nomination petition when the elector uses the address set forth in his voter registration record instead of setting forth his street address and municipality. By way of explanation, the nomination petition contains columns with four headings: (1) signature of elector, (2) printed name of elector, (3) place of residence, and (4)' date of signing. The place of residence column is further divided into three more specific columns: (a) house number, (b) street or road, and (c) city, borough or township. Underneath the rows are columns where a signer writes the requested information. Column 3(c) — city, borough, or township — is the subject of dispute. Objector characteiizes column 3(c) as requiring a signer to list his “municipality.”' We observe, however, that the nomination petition does not include a column expressly requesting a signer to list his “municipality.” Moreover, we note that mailing addresses usually contain a house number, street or road, and the name of a nearby city or town. The city or town included in the mailing addresses does not always match the legal name of the municipality where the residences are located.
Here, Objector argues that the MUN entries on Candidate’s nomination petition must be stricken, because the signers did not set. forth their proper municipality— ie., their physical address. Instead, they used addresses which matched addresses set forth in their voter registration records — ie., their mailing address. Objector appears to reason that under Flaherty and its progeny, where a signer’s address on the nomination petition does not match the address for the municipality identified in the voter • registration records, a prima facie case is made that the entry must be stricken in the absence of rehabilitative evidence. Objector maintains that the MUN entries contain a fundamental address error — “the municipality listed in each of those entries does not match the municipality of the signer in the- SURE system.” (Objector’s Br. at 17 (emphasis added).)
Candidate argues that this issue was addressed and squarely rejected by the Court in Creighton, when our Court considered whether an entry on the candidate’s nomination papers should be stricken where the signer wrote his mailing address in the space for “City, Boro or Twp.,” rather than his township, and rejected the notion that a signer was required to list his municipality in order for his signature to be valid. Creighton, 899 A.2d at 1167.
Noting that the candidate had offered evidence that the addresses on the nomination papers were the signers’ mailing addresses, the Court in Creighton held that when signing a nomination petition, an elector may use either his “mailing address or the municipality of the elector’s election district in the space on the petition marked ‘City, Boro or Twp.’ ” Id. at 1170. The Court explained more fully as follows:
Under Nader and Flaherty, absent extraordinary circumstances, Section 908 of the Election Code requires that the elector’s address must conform with the elector’s address as it appears on the voting registration card. Neither Nader nor Flaherty dealt with the specific issue here of whether an elector’s signature *263 should be stricken when the elector uses his or her mailing address rather than the municipality in which he or she resides.
Whether a mailing address is a defect at all depends on what the Election Code requires. Section 704 of the Election Code, 25 P.S. § 2814, sets forth the rules for determining an elector’s residence. It provides that a person desiring to register to vote must do so for that place where the person’s habitation is fixed, and to which, whenever he or she is absent, he or she has the intention of returning. 25 P.S. § 2814(a). The term “election district” is. defined in the Election Code as “a district, division or precinct, established in accordance with the provisions of this act, within which all qualified electors vote at one polling place.” Section 102 of the Election Code, 25 P.S. § 2602.
In addition, Section 1102 of. what is commonly referred to as the Pennsylvania Voter Registration Act, 25 Pa.C.S. § 1102, identifies information tfiat must appear on a voter registration card. It requires, inter alia, the “ward and election district of residence” and the “registrant’s street address,” 25 Pa.C.S. § 1102. This Court construes “street address” to signify the voter’s mailing address. The record shows that the elector’s mailing address, and the elector’s election district are both included on the elector’s voter registration card. Accordingly, when an elector signs a nomination petition, the' elector may use either his or her mailing address or the municipality of the elector’s election district in the space on the petition marked “City, Boro or Twp.” This is consistent, also, with our Supreme Court’s holding in Flaherty and Nader that the address used on a nomination petition must match the address shown on the voter registration card.
Objectors do not claim that any of the signatures in question are unauthentic; that the street address is inaccurate; that any of the feigners live at an address other than the one listed; or that they are not duly registered voters or electors in the 37th Legislative District. As a result, the ... challenges . -.. fail.
Creighton, 899 A.2d at 1169-70 (footnotes omitted).
Objector argues that Creighton is not contrary to his position, because Candidate has not offered any evidence that the MUN entries reflect the mailing addresses for those signers. Rather, Objector maintains that the parties have merely stipulated that those entries
contain a name, signature, and street address matching that of an individual registered to vote in the county reflected on the Petition page containing the entry, but the place set forth in the “City, Boro or Twp.” section of the entry does not match the political subdivision on record in the SURE -system for the individual of that name and street address.
(Stip. ¶ 6.) Because there is no record evidence that the MUN entries reflect the mailing addresses of the signers, Objector contends that the factual prerequisite for the rationale employed by the Court in Creighton is absent here and the MUN entries should be stricken.
Objector’s argument is specious,, as it attempts to mischaracterize the nature of the information set forth in the voter registration record-and obscures the basis for the Court’s opinion in Creighton. Objector implies that the address set forth in the voter registration record is not necessarily the “mailing address” of the elector referred to in Creighton, but perhaps may be some other type of address. Objector also appears to imply that, under Creighton, a candidate must establish that the address *264 on the nomination petition is the- actual mailing address, not that it is the address set forth in the voter registration record. Under Objector’s argument, when the information in the “City, Boro or Twp.” column does not match the municipality listed in the voter registration record, absent rehabilitative evidence that the address in the voter registration record is, in fact, the signer’s mailing address, it is irrelevant if the address on the nomination petition matches the address in the -voter registration record. Instead, the voter must present evidence that the address in the voter registration record is also the mailing address used by the signer.
Objector clearly misapprehends Creighton. Section 704 of the Election Code; to which the Court referred in Creighton, sets forth the rules for determining an elector’s “residence,” not an elector’s mailing address. Section 1102 of the Voter Registration Act, to which the Court also referred to in Creighton, identifies information that must appear on a voter registration card, including the “ward and election district of' residence” ■ and the “registrant’s street address.” Section 1102 does not require that the registrant provide a “mailing address” for inclusion on the voter registration card, and we do not believe that the General Assembly intended the “registrant’s street address” to be anything other than the street address for- the registrant’s residence, which, usually functions as a mailing address. Moreover, the Court in Creighton construed “ ‘street address to signify the voter’s mailing address.” Creighton, 899 A.2d at 1170. Thus, Objector’s contention that the Court in Creighton, when it referred to a signer’s “mailing address,” somehow was referring to something other than the street address as set forth in the voter registration record lacks merit. To conclude otherwise would render the “street address” in the voter registration record meaningless.[24] Thus, we reject Objector’s interpretation of Creighton.
We agree with Candidate that Creighton squarely addressed this issue, and Objector has not presented any compelling reason to alter, let alone abandon, the analysis set forth in Creighton, particularly where the relevant statutory provisions require registrants to provide a “registrant’s street address” and “ward and election district of residence” for inclusion on the voter registration card, see Section 1102 of the Voter Registration Act, and the nomination petition does not contain language expressly requiring that a signer set forth his municipality. ■ Although the significance of Flaherty and Nader as recounted in Creighton may be diminished in light of our discussion above with respect to the NRA: issue, the statutory analysis in Creighton remains solid.[25]
*265 For these reasons, we reject Objector’s challenges to the MUN entries and reiterate our earlier holding in Creighton that “when an elector signs- a nomination petition, the elector may use either his or her mailing address or the municipality of the elector’s election district in the space on the petition marked ‘City, Boro or Twp.’ ” Creighton, 899 A.2d at 1170.
Accordingly, because the Court strikes the signatures that were challenged based upon the signers being “not registered' at the address” contained on the nomination petition, we grant Objector’s petition to set aside Candidate’s nomination petition.
ORDER
NOW, this 30th day of March, 2016, upon consideration of the Petition of Joseph A. Sestak, Jr. (Objector) to Set Aside the Nomination Petition of Joseph Vodvar-ka as a Candidate (Candidate) of the Democratic Party for the United States Senate, it is hereby ordered:
1. With regard to Objector’s “Not Registered at Address” challenges to 461 signatures based upon a contention that the signatures should be stricken because the entries contain a name and signature matching that of a person registered to vote in the county reflected on the nomination petition page containing the entry, but the address provided in the entry does not match the address on record in the Statewide Uniform ' Registry of Electors (SURE) system for the individual of that name, the Court concludes that the signatures shall be STRICKEN.
2. With regard to Objector’s “Municipality” challenges to 220 signatures based upon a contention that the signatures should be stricken because the signatures “contain a name, signature, and street address matching , that of an individual registered to vote in the county reflected on the nomination petition page containing the entry, but the place set forth in
3. the “City, Boro or Twp.” section of ‘the entry does not match the political subdivision on record in the SURE system for the individual " of that name and street address,” the Court concludes that the signatures are VALID.
4. As a result of the above rulings, the Petition .to Set Aside the Nomination Petition of Joseph Vodvarka is GRANTED, because Candidate’s nomination petition now contains less than the requisite number of valid signatures required for his name to be on the ballot as Candidate for the Democratic Party for the Unites States Senate.
6. The Secretary of the Commonwealth is directed to REMOVE the name of Joseph Vodvarka as Candidate of the Democratic Party for the United States Senate from the ballot for the Democratic Primary on April 26, 2016.
6. The Chief Clerk shall notify the parties hereto and their counsel of this order and also certify a copy hereof to the Secretary of the Commonwealth.

. Section 912.1(2) of the Act of June 3, 1937, P.L. 1333, added by the Act of December 12, 1984, P.L. 968, as amended, 25 P.S. § 2872.1(2). Section 912.1(2) of the Election Code provides:
Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper parly as listed below:
(2) United States Senate: Two thousand.

. The parties stipulated that Candidate's nomination petition, as originally filed, contains a totál of 2,744 signatures. (Stipulation filed March 11, 2016 (Stip.), ¶ 1.) They also stipulated that 558 signatures are stricken by agreement of the parties, leaving 2,186 signatures remaining on the nomination petition. (Stip. ¶¶ 2, 3.) They agree that if 187 or more of those remaining signatures are stricken or rejected for any reason, Candidate’s nomination petition will not'contain a sufficient number of valid signatures to enable Candidate to qualify for the.ballot. (Stip. ¶ 3.)

. SURE is the acronym for the Statewide Uniform Registry of Electors.

. The parties also stipulated that other signatures were challenged based upon defective circulator’s affidavits, but that Candidate could cure those defects by filing an affidavit with this Court, which he did on March 14, 2016. Objector has now withdrawn the objections based on defective circulator’s affidavits. (Objector’s Br. at 4 n. 1.)

. Candidate characterizes the issues somewhat differently — whether, under existing federal and state law, registered voters remain registered voters "when they change their residence within the county in which they are registered to vote without first updating their address with the voter registration authorities.” (Candidate’s Br. at 8.) This phrasing appears to presuppose that if the addresses are different but the signatures match, the elector must have moved within the county. Such a presumption may not always be true, and we note that the Stipulation does not indicate that the parties agree that the signers of the NRA entries actually moved within, let alone reside within, the county. Rather, they essentially agree that the addresses differ but the signatures match.

. Objector also notes- that the Pennsylvania Supreme Court more recently referred to its holding in Flaherty regarding signatures not matching a registered, elector's address in In re Nomination Petition of Gales, 618 Pa. 93, 54 A.3d 855 (2012).

. As a reported, single-judge opinion in an election law matter filed prior to October 1, 2013, Vodvarka has only persuasive value. Commonwealth Court Internal Operating Procedure (IOP) 414(b), (d), 210 Pa.Code § 69.414(b), (d).

.Act of June 30, 1995, P.L. 170, as amended, 25 P.S. §§ 961.101-961.5109, repealed by the Act of January 31, 2002, P.L. 18, and replaced by what is known as the new Pennsylvania Voter Registration Act, 25 Pa.C.S. §§ 1101— 3302.

.In support of the argument that the Supreme Court’s holding in Flaherty functioned to unduly burden ballot access in violation of the Voting Rights Act, Nader relied upon the following provision of the Voting Rights Act:
No person acting under color of law shall deny the right of any individual to, vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.,..
42 U.S.C. § 1971(a)(2)(B).

. The parties are quite familiar with, this Court’s decision in Vodvarka, because it involved Objector’s challenge to Candidate’s nomination petition for this same office six years ago.

. Judge Leavitt assumed the role of President Judge on January 4, 2016.

. Section 1501(b)(2) of the PVRA, which became effective March 18, 2002, provides:
'(b) Use. — A registered elector who removes residence from one place to another within the same county must notify the commission by filing a removal notice under subsection (a) or a signed request for renewal that contains the information required in subsection (a) with the commission not later than the registration deadline before an election.... The following apply:
(2) A registered elector who removes residence from one place to another within the same county and who has not yet filed a removal notice with the commission shall be permitted to vote once at the elector’s former polling place following removal if, at the time of signing the voter’s certificate, the elector files with the judge of election a signed removal notice properly filled out.... A registered elector may vote in the election district of the elector’s former residence not more than one time following the elector’s removal.

. Robertson, as an unreported panel decision of this Court, has persuasive value, but it does not constitute binding precedent. IOP 414(a), 210 Pa.Code § 69.414(a).

. The parties in Robertson were directed to brief several issues, including "[w]hether the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6, and cases decided thereunder require that registered voters may sign federal nomination papers for candidates for federal office using an address that does not match the voters' addresses in the registration records,” and "[w]hether arguments related to the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6, apply to address the validity of signatures in support of non-federal state candidates[.]” Robertson, slip op, at 4-5.

. Section 1973gg-6(e) [of the NVRA] provides that: ;.
(2)(A) A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar’s jurisdiction and the same congressional district and who has failed' to notify the registrar of the change of address prior to the date of an election, at the option of the registrant—
(i) shall be permitted to correct the voting records and vote at the registrant’s former polling place, upon oral or written affirmation by the registrant of the new address before an election official at that polling place.
42 U.S.C. § 1973gg-6(e) (emphasis added [in Robertson ]).

. Section 1973gg-6(d) [of the NVRA] provides that:
(1) A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant—
(A) confirms in writing that the registrant has changed residence to a place outside the registrar’s jurisdiction [the county] in which the registrant is registered; or
(B)(i) has failed to respond to a notice described in paragraph (2); and
(ii) has not voted or appeared to vote (and, if necessary, correct the registrar’s record of the registrant’s address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.
42 U.S.C. § 1973gg-6(d) (emphasis added [to Robertson ])[ (alteration in Robertson) ].

. HAVA’s provisions were transferred from 42 U.S.C. §§ 15301-15545 to 52 U.S.C. §§ 20901-21145.

. Added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.4(a).

. See Sections 102(t) and 951(c) of the Election Code, 25 P.S. §§ 2602(t), 2911(c).

. Similarly, Robertson’s reliance upon the Supreme Court’s 2012 opinion in Stevenson is also misplaced, as Stevenson involved provisions of the Election Code imposing district residency requirements for those collecting signatures on nomination papers.

. In In re Nomination Petition of Lunny (Pa. Cmwlth., No. 170 M.D, 2012, filed April 5, 2012) (Pellegrini; P.J.), rev’d, 615 Pa. 460, 44 A.3d 1 (2012) (per curiam), then-President Judge Pellegrini, rather than applying the reasoning set forth in Flaherty arid Nader, de- ' dined to strike two signatures of electors who were registered in the voting district but listed different addresses within the voting district on the nomination petition than theif addresses contained in the SURE system. In deciding not to strike the signatures, the Court specifically noted that there was no dispute that the actual signatures were valid — i.e., that the signatures- matched the signatures of the electors in the SURE system — and determined that the deviations in the addresses were de minimus. On appeal, however, the Supreme Court reversed, expressly relying on its holdings in Flaherty and Nader. The Court recognizes that the Supreme Court’s per cu-riam order in Lunny is not binding, see Commonwealth v. Tilghman, 543 Pa. 578, 673 A.2d 898, 904 (1996), but we nevertheless find the reasoning in the order persuasive and indicative of the Supreme Court’s continued adherence to Flaherty and Nader.

. In Sweeney, our Court wrote:
As the Robertson court recognized, the current statutory provisions treat changes of address within the same county as not impairing the voter’s eligibility to vote and, thus, not impairing the voter’s status- as a qualified elector. [Robertson ], slip op. at 18-20. However, the perspasive analysis in Robertson cannot overcome the binding effect of the Supreme Court's recent ruling in [Lunny ]. ’’
Sweeney, slip op. at-5. We acknowledge that Sweeney does not constitute binding precedent on this Court, See IOP 414(b), (d), 210 Pa.Code § 69.414(b), (d).

.Recently, this Court- has applied the burden-shifting analysis set forth .in Vodvarka, See In re Nomination Petition of Eichenlaub (Pa.Cmwlth., No. 98 M.D. 2016, filed March 22, 2016) (Wojcik, J.); In re Nomination Petition of Walker-Montgomery (120 M.D. 2016, filed March 17, 2016) (Wojcik, J.);. In re Nomination Petition of Singer (Pa.Cmwlth., No. 514 C.D. 2015, 2015 WL 5436912, filed April 23, 2015) (Cohn Jubelirer, J.); In re Nomination Petition of White (Pa.Cmwlth., No. 446 C.D. 2015, 2015 WL 5435610, filed April 17, 2015) (Cohn Jubelirer, J.); and In re Nomination Petitions of Warner (Pa.Cmwlth., No. 163 M.D. 2014, filed April 2, 2014) (Pellegrini, P.J.).

. Objector’s interpretation, would also create an. unworkable framework where a candidate, when a signer failed to list his municipality on the nomination petition, would need to bring in extrinsic evidence that the signer uses the address set forth on the nomination petition (which matches the street address in the voter registration record) to receive mail.

, In support of his argument, Objector also cites In re Nomination Petition of White (Pa. Cmwlth., No. 446 C.D. 2015, 2015 WL 5435610, filed April 17, 2015) (Cohn Júbdirer, J.), an unreported single-judge opinion, . ■ wherein a signer mistakenly .wrote an incorrect house number on the nomination petition and the Court allowed the candidate to meet his burden to prove “extraordinary circumstances” by producing evidence showing that the signer had made a mistake. Objector points out that the Court'in White did not conclude that the error in the house number was de minimis and could or should be overlooked. Objector seems to,suggest that this is akin to the situation now before the Court, because the municipality is listed incorrectly. White, however, in no way supports Objector's argument.